In the Matter of NEW YORK COUNTY DES LITIGATION.

MARGARET PERROTTE et al., Appellants, v ELI LILLY AND COMPANY et al., Respondents.

First Department, October 15, 1991

### APPEARANCES OF COUNSEL

*Ronald R. Benjamin* for appellants.

*Russel H. Beatie, Jr.,* of counsel *(Kenneth J. King* and *Eric J. Gruber* with him on the brief; *Brown & Wood,* attorneys), for Eli Lilly and Company, respondent.

*Ronald G. Blum* of counsel *(Morrison & Foerster,* attorneys), for McKesson Corporation, nonparty respondent.

### OPINION OF THE COURT

SULLIVAN, J. P.

This action to recover for personal injuries sustained by plaintiff Margaret Perrotte as a result of her mother's ingestion of the drug diethylstilbestrol (DES) during the pregnancy that resulted in plaintiff's birth in 1962, one of over 400 similar actions filed against DES manufacturers, was originally commenced against five pharmaceutical manufacturers, four of which have settled with plaintiffs and are no longer in the case. Only Eli Lilly and Company, which plaintiffs now contend is the manufacturer of the DES ingested by the mother, remains in the action.

According to plaintiffs, the drug was purchased at Lynn's

Drug Store in Owego, New York, the records of which are no longer in existence. Nor is anyone alive today who worked at Lynn's during the relevant period. After filing a notice identifying Lilly as the manufacturer of the DES ingested by plaintiff's mother, plaintiffs noticed the depositions of the custodian of records of a nonparty, McKesson Corporation, and a long-time employee in its Buffalo office, Angie Ferrentino. Their testimony was sought on the basis of facts showing that during the period plaintiff's mother was carrying her in 1962 the wholesaler supplying Lynn's was McKesson's Syracuse distribution center, which closed some 10 years ago. Plaintiffs seek to depose Ferrentino in the belief she has knowledge of McKesson's practice, for the years 1953 to 1962, of supplying Lilly DES if DES was, as claimed, ordered generically. The instant appeal arises out of the grant of a motion for a protective order quashing the two subpoenas by which these depositions were sought to be compelled. Also at issue is the subsequent and related rescission of a previously ordered commission authorizing plaintiffs to take the deposition of a nonparty witness, a pharmacist, in Pennsylvania.

Before seeking the McKesson depositions, plaintiffs had already deposed Robert Bovier, a pharmacist who began working at Lynn's in 1965. He testified that "[a]t one time, Lilly brand was automatically supplied by the wholesaler if you ordered a generic product." Bovier testified that Lynn's primarily used McKallor in Binghamton and McKesson in Syracuse as its wholesalers. Plaintiffs also deposed Richard Lynn, the grandson of the founder of Lynn's, who did not begin to work at the drugstore until early 1969 and who knew nothing of Lynn's stocking or dispensing practices during the relevant period. He did, however, confirm that McKesson in Syracuse was one of its primary wholesalers. He also testified that between 1969 and 1979 a "good percentage" of Lynn's pharmaceuticals were purchased directly from the manufacturer, not a wholesaler. In his deposition, Charles J. Bernas, a former Lilly salesman who had serviced Lynn's from 1959 to 1969, confirmed that Lynn's used McKallor in Binghamton or McKesson in Syracuse as its wholesaler.

In her affidavit in support of the motion to quash, Ms. Ferrentino, a 40-year employee at McKesson's Buffalo distribution center, stated that she was aware of a practice there by which a DES order which did not specify a manufacturer would be filled with DES manufactured by Lilly. She, however, knew nothing of the practices followed at McKesson in

Syracuse or at any other distribution center. In his affidavit, Joseph E. Polastri, the current president of McKesson's Distribution Group, aside from attesting to the lack of any records from the defunct Syracuse distribution center indicating whether Lynn's was one of its customers, stated that each McKesson center had its own purchasing, warehousing and selling practices.

In opposition to the motion, plaintiffs asserted that an agreement existed between Lilly and McKesson requiring the latter to sell only Lilly products to pharmacies ordering a drug by its generic name. Lilly's counsel conceded the existence of such an agreement but claimed that it terminated in 1961. Plaintiffs argued that Ms. Ferrentino's testimony concerning the practices of McKesson, which marketed on a national scale, in Buffalo would be relevant since it could provide a permissible basis for a jury to infer that such a practice was in existence at its other distribution centers in 1962. Plaintiffs indicated that although the physician who treated her mother in 1962 was dead they had 120 unrelated prescriptions written by him ordering DES by its generic name, diethylstilbestrol. Moreover, plaintiffs alleged, plaintiff's mother would testify that between 1954 and 1966 she never varied her practice of having her prescriptions filled at Lynn's.

In opposing the motion, plaintiffs also cited a brief excerpt from Bovier's deposition:

"Q. Since you were at Lynn's in June 1965, do you recall any instances of ordering pharmaceuticals, asking for DES under Lilly's brandnames or Upjohn's brandname?

"A. At one time, Lilly brand was automatically supplied by the wholesaler if you ordered a generic product.

"Q. Was this from June of '65 or until sometime after?

"A. I do not know what the time frame was.

"Q. Was it while you were at Lynn's?

"A. I would say yes."

The IAS court justified its vacatur of the subpoenas by ruling that evidence of what occurred in Buffalo would not be admissible to show the existence of a practice in Syracuse. The court also vacated its previously issued commission authorizing the deposition of a pharmacist in Pennsylvania on the issue of McKesson's custom and practice in filling orders for generic drugs. We reverse.

Pursuant to CPLR 3101 (a), "There shall be full disclosure

of all evidence material and necessary in the prosecution or defense of an action, regardless of the burden of proof". With respect to a nonparty, the scope of disclosure is the same—"all evidence material and necessary in the prosecution or defense of an action, regardless of the burden of proof * * * upon notice stating the circumstances or reasons such disclosure is sought or required." (CPLR 3101 [a] [4].) While materiality and necessity obviously place some limits on the scope of disclosure, disclosure should be permitted as long as the information sought bears on the controversy and will assist in the preparation for trial; the ultimate test is one of " 'usefulness and reason' " *(O'Neill v Oakgrove Constr.,* 71 NY2d 521, 526; *Allen v Crowell-Collier Publ. Co.,* 21 NY2d 403, 406). Thus, pretrial disclosure extends not only to proof that is admissible but also to matters that may lead to the disclosure of admissible proof. *(Fell v Presbyterian Hosp.,* 98 AD2d 624, 625.)

In *Villano v Conde Nast Publs.* (46 AD2d 118, 120), this court cited with approval a Fourth Department case *(Kenford Co. v County of Erie,* 41 AD2d 586) holding that disclosure by a nonparty witness under State practice should be as broad as in the Federal courts. *(See also, Slabakis v Drizin,* 107 AD2d 45, 46.) In holding that the barrier to the deposition of a nonparty witness created by CPLR 3101 (a) (4) is "truly a nominal one" *(Villano v Conde Nast Publs., supra,* at 120), this court quoted the Fourth Department standard, " 'A mere showing by the lawyer that he needs such witness's pretrial deposition in order to prepare fully for the trial should suffice as a "special circumstance." ' "* *(Kenford Co. v County of Erie, supra,* at 586, quoting Siegel, Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR C3101:22.) "Whether * * * adequate special circumstances have been shown to support discovery against a nonparty is generally a determination to be made upon a review of the facts, and rests within the sound discretion of the court to which application is made". *(Brady v Ottaway Newspapers,* 63 NY2d 1031, 1032.)

* Prior to a 1984 amendment which merely requires the party seeking the deposition of a nonparty witness to serve a notice stating the circumstances or reasons such disclosure is required, CPLR 3101 (a) (4) required the court, on motion, to determine that "special circumstances" existed before the deposition of a nonparty witness could proceed. The liberal construction accorded the "special circumstances" language in the pre-1984 statute has been carried forward to the amended statute. *(See,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3101:23; *Slabakis v Drizin, supra.)*

That discretion is, of course, reviewable by this court, which, even in the absence of abuse, may substitute its own discretion. *(Supra.)* In this regard, plaintiffs urge that since the information they seek to prove the existence of a practice existing in 1962 by which McKesson sold Lilly DES whenever the drug was ordered generically cannot be obtained from another source, the "special circumstances" requirement of CPLR 3101 (a) (4) has been satisfied.

■ The primary reason for the IAS court's quashing the subpoenas was Ferrentino's lack of any knowledge regarding Lilly's preference agreement, particularly with respect to McKesson's Syracuse distribution center, and Lilly's claim that no such agreement existed after 1961. In our view, the court employed an overly restrictive standard in ruling that McKesson employees would be unable to provide relevant evidence or information which would lead to the disclosure of admissible proof. Plaintiffs, of necessity, must rely on circumstantial evidence in order to identify Lilly as the manufacturer of the DES ingested by plaintiff's mother, since the Syracuse distribution center and its records are no longer in existence and the physician who prescribed the drug is deceased, as is the pharmacist who filled her mother's prescriptions at Lynn's Drug Store. As is clear, however, from the affidavit of Ms. Ferrentino submitted in support of the motion for a protective order, a practice did exist at McKesson's Buffalo distribution center of supplying Lilly products if the order did not specify a manufacturer. There is also evidence based on Bovier's testimony that if Lynn's ordered drugs generically it received a Lilly brand product. The issue is whether the practice at McKesson's Buffalo center would be relevant to demonstrate that the same practice existed at the Syracuse center in 1962. In this regard, it is noteworthy that Ms. Ferrentino does not state when the practice at the Buffalo center was discontinued.

It is generally accepted that evidence of other acts or transactions is admissible when sufficiently connected with the act or transaction at issue as tending to support the inference that they were part of a plan or system. *(Altman v Ozdoba,* 237 NY 218.) Plaintiffs argue that if they establish that a practice of filling drug orders which did not specify a manufacturer with a Lilly product existed in Buffalo in 1962 a jury may, since McKesson was a national wholesaler with nationwide distribution policies, infer from that fact the existence of a similar practice in Syracuse. Plaintiffs contend that

they expect to introduce evidence that McKesson's practices were similar throughout its distribution centers.

We believe that the information sought from McKesson and Ferrentino would be relevant, at least incrementally, on the issue of whether a practice of providing DES manufactured by Lilly whenever such drug was generically ordered also existed at the Syracuse center. Since, in our view, plaintiffs made an adequate showing that the nonparty witness McKesson could provide relevant and material information on issues pertinent at the identification trial, which information is not readily available from other sources, the subpoenas should not have been quashed.

■ Nor should the court have rescinded the previously issued commission for taking the deposition of the pharmacist residing in Pennsylvania. Plaintiffs sought his testimony as "a pharmacist who worked in the area where plaintiff's mother was given DES and [one who] is in a position to provide information concerning pharmaceutical customs and practice in the area where the [mother's] treating physician practiced. He, in fact, knew the [mother's] treating physician, although [they are] not sure about what he knew with regard to the treating physician's practices." Although it is less clear as to precisely what relevant information this witness could give, we are unable to conclude that he would not have relevant information to provide. Mindful that both the treating physician and pharmacist are deceased, that no records exist as to the treatment of plaintiff's mother during her pregnancy and that plaintiff is not in a position to testify about any of the events bearing on the identification issue, we believe that the commission should not have been rescinded.

Accordingly, the order of the Supreme Court, New York County (Ira Gammerman, J.), entered on or about August 16, 1991, which, *inter alia,* quashed two subpoenas served by plaintiffs on nonparty witnesses and rescinded a prior order granting plaintiffs' application for a commission to depose a nonresident witness, should be reversed, on the law and the facts, and in the exercise of discretion, without costs or disbursements, and the motion to quash denied and the commission reinstated.

CARRO, MILONAS and KUPFERMAN, JJ., concur.

Order, Supreme Court, New York County, entered on or about August 16, 1991, unanimously reversed, on the law and the facts, and in the exercise of discretion, without costs or

disbursements, and the motion to quash the subpoenas denied and the commission reinstated.

Application by defendant-respondent Eli Lilly and Company to supplement the record is granted.