OPINION OF THE COURT
Franklin R. Weissberg, J.
The People have moved for a contempt citation against Union Bank of Switzerland (UBS) for failure to comply with a Grand Jury subpoena duces tecum dated April 14, 1993.
*223 On March 5,1993 a Grand Jury subpoena was served on the New York branch of UBS, returnable on March 16. That subpoena requested records pertaining to "account No. 42759”, a number found on the face of a cashier’s check payable to UBS, which was provided to the Grand Jury by Planters Bank in North Carolina. In a letter dated March 11, UBS responded to that subpoena stating that the New York branch of UBS had no records responsive to it. UBS’s attorneys subsequently informed the District Attorney that UBS has no accounts identified with only five digits in any of its branches anywhere in the world.
The District Attorney thereafter advised UBS that the "account number” was obtained from the face of a cashier’s check provided to it by Planters Bank. The check, payable to UBS, had a note in the corner of the check that read "Re: Zurich Corporation Account #42759.” The District Attorney told UBS that the document provided was not a copy of the canceled check itself, but rather a photocopy of the Planters Bank record copy of the check made at the time of issuance. The copy did not show any endorsements on the back side indicating to whom or at what bank the cashier’s check was actually paid.
UBS requested that the District Attorney inquire if Planters Bank had any record of the check having been paid. UBS assured the District Attorney that it would assist in any further investigation as long as that cooperation did not violate Swiss law.
Upon further investigation the District Attorney discovered that the check had been endorsed "For Deposit to the Account of Christine Cotton only in UBS” and bore a stamped endorsement from a UBS branch in Geneva, Switzerland. On April 12 this information was transmitted to UBS which promptly expanded its investigation.
On April 14, UBS was served with a new subpoena requesting Bank records of any accounts "in the name of Christine Cotton”. After receipt of that subpoena, the District Attorney and UBS’s attorney conversed regularly concerning the progress of the UBS search. It was slowed by the poor quality of the copy of the check, and the fact that UBS has many branches in Geneva all of which needed to be searched separately due to UBS’s lack of a central computer system.
On May 4 UBS informed the District Attorney that its search was completed but that it was prohibited by Swiss law *224 from disclosing documents or information regarding accounts located in Switzerland. UBS claims that if it disclosed the requested information it would violate article 47 of the Swiss Federal Banking Code, and articles 271 and 273 of the Swiss Penal Code, which would subject it to criminal and civil liability in Switzerland, and possible license revocation.
UBS also informed the District Attorney that any bank records located in Switzerland should be obtained by the District Attorney’s office under the Treaty between the United States of America and the Swiss Confederation on Mutual Assistance in Criminal Matters (the Treaty; 27 UST 2019). The Treaty provides a mechanism by which the District Attorney can obtain the records it seeks from UBS without causing the bank to violate Swiss bank secrecy laws.
In resisting the April 14th subpoena, UBS relies on the doctrine of comity which requires that a court give due regard to the applicable laws in any foreign jurisdiction before issuing orders having effects there. UBS claims that the District Attorney should be required to obtain the subpoenaed information by resort to the Treaty, rather than requiring UBS to knowingly and intentionally violate Swiss bank secrecy laws.
Neither party disputes the applicability of the Treaty. It has been used successfully on more than 400 occasions by law enforcement agencies in the United States, with approximately two thirds of the requests being for disclosure of Swiss bank account records. UBS points out that the Grand Jury investigation involves, among other things, allegations of bribery. Bribery is an offense enumerated in the Treaty which creates a compulsory obligation on the Swiss government to produce the requested information, mandating compliance. UBS also contends that in a memorandum of understanding signed on November 10, 1987, the United States and Swiss governments reaffirmed their commitment to the Treaty, in order to avoid or minimize conflicts arising from the exercise of jurisdiction in law enforcement matters. Among other matters the parties agreed that the procedures provided by the Treaty should be used "as a first resort whenever available and to the extent applicable.” (27 ILM 480, 482 [emphasis added].) It is clear that the memorandum of understanding was designed to cover cases such as this.
The District Attorney argues that because UBS regularly does business in and derives profit from the State of New York, it is subject to New York legal process, regardless of any *225 conflict that might arise with Swiss law. He contends that he has the right to insist upon his subpoena power despite the existence of a treaty dealing with the subject matter he seeks to subpoena.
The District Attorney relies on Matter of Barclays Bank Intl. (NY County 1983), in which a motion to quash a Grand Jury subpoena was denied when the bank records sought were located in Nassau, the Bahamas. That court applied the doctrine of comity which requires courts to avoid creating unnecessary conflicts between the legal requirements of different nations. (See, e.g., United States v First Natl. City Bank, 396 F2d 897 [2d Cir 1968].) The court recognized that comity requires a careful balancing of interests before issuing an order that encroaches upon the sovereignty of another nation, rejecting the argument that a Grand Jury subpoena outweighs all other interests. Under the facts of that case the court held that the bank was not entitled to the relief requested because it had not acted in complete good faith by first exhausting all other available options by which it could obtain the subpoenaed evidence.
The instant case is very different. Here, there are no options available under Swiss law by which UBS could seek relief in Switzerland from the strictures of the Swiss banking statutes. In this case there is a treaty between the United States and Switzerland that provides a reasonable alternative method for the District Attorney to obtain documents from the foreign country. No such treaty existed between the Bahamas and the United States in the Barclays case (supra).
The only reported New York State case bearing on the issue is Matter of Grand Jury Subpoena (Continental Ill. Natl. Bank & Trust Co.) (96 AD2d 480 [1st Dept 1983]). In that case the Appellate Division denied a motion to quash, and required the bank to make a good-faith effort to comply with a subpoena that apparently conflicted with Greek law, citing a provision of Greek law that would allow disclosure under certain circumstances. That Court rejected respondent’s argument that the New York County District Attorney’s office should be required to petition the Greek government, holding that it was the bank’s responsibility to do everything legally possible to comply with the subpoena. Since the bank had not taken every possible step to avoid a conflict of laws problem between the two nations, the requested relief was denied pending an attempt by the bank to comply with the subpoena via the unexplored provision. In the instant case UBS has made *226 strenuous good-faith efforts to comply with the subpoena and has exhausted all options available that might allow compliance with the subpoena without violating Swiss bank secrecy laws.
Before requiring UBS to engage in conduct which violates Swiss bank secrecy laws, this court, considering the comity interests involved, would have to be persuaded: (1) that the subpoenaed information is crucial to the Grand Jury investigation; (2) it cannot otherwise be obtained in a timely fashion; and (3) that respondent failed to attempt to comply with the subpoena in complete good faith.
The District Attorney has conceded that the subpoenaed material is not crucial to his Grand Jury presentation, although he contends that it will be necessary at trial. He has also conceded that any trial will not take place for at least six months. UBS maintains that the subpoenaed information can be obtained by the District Attorney within two to three months by resort to the Treaty and has offered to cooperate with the District Attorney in expediting any request. There can be no question that UBS has acted in complete good faith in attempting to comply with the subpoena and in assisting the District Attorney to secure the subpoenaed material.
On the facts of this case and for the reasons cited above, the application to cite UBS for contempt is denied and UBS’s application to quash the subpoena is granted.