ARKANSAS DEPARTMENT of HUMAN SERVICES *v.*
The Honorable Linda P. COLLIER

02-1021 95 S.W.3d 772

Supreme Court of Arkansas
Opinion delivered January 23, 2003

*Richard Neil Rosen,* Office of Chief Counsel, for petitioner.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for respondent.

R OBERT L. BROWN, Justice. The Arkansas Department of Human Services (DHS) petitions this court for a writ of prohibition or, in the alternative, for a writ of *certiorari*, vacating Faulkner County Circuit Judge Linda P. Collier's order in which she declared an unborn fetus to be dependent–neglected and placed the fetus in DHS's custody.[1] The court further mandated that DHS pay the cost of the mother's prenatal care. The sole ground for DHS's petition is that the circuit court was without subject-matter jurisdiction to enter its order or, alternatively, that Judge Collier exceeded her jurisdiction when she entered the custody order. We deny the petition for a writ of prohibition, but we grant the petition for a writ of *certiorari*.

On August 26, 2002, the circuit court entered an order terminating the parental rights of both Jeff Harper and Alicia Bennett with respect to their 13-month-old son, Justin. In its termination order, the court stated that it was retaining jurisdiction over the case for later review. The next day, the circuit court entered a pick-up order for Ms. Bennett, citing as probable cause the fact that she was placing her unborn child "at imminent and substantial risk of serious physical harm or death." The court based its finding on the testimony of Diana Rivers, the court-appointed special advocate, and Shelly Lamb, the maternal grandmother. Their testimony revealed that Ms. Bennett was again pregnant, that she had not received prenatal care, that she was abusing illegal drugs, and that she had illegal drugs in the home where she was living. The court further noted that in recent drug tests, prior to the petition to terminate parental rights, Ms. Bennett had tested positive for methamphetamine. For these reasons, the court ordered police officers to locate Ms. Bennett and detain her in the Faulkner County Detention Center. The court further ordered that drug tests be performed on her with the results to be provided to the court and that prenatal care be administered. The court also

---

[1] A writ of prohibition lies against the circuit court and not against an individual judge. *See Ford v. Wilson*, 327 Ark. 243, 939 S.W.2d 258 (1997). We will treat the prohibition petition as if it were filed against the Faulkner County Circuit Court.

ordered DHS to place the matter on its docket for a hearing after the mother's detention.

On August 29, 2002, the circuit court held an emergency hearing and a contempt hearing on its own motion. The court questioned Ms. Bennett as to whether she was pregnant, which she admitted. At the hearing, the court also confirmed from DHS that Ms. Bennett had tested positive for methamphetamine on August 27, 2002, when she was taken into custody. The court then held Ms. Bennett in contempt and ordered her to remain in the custody of the Faulkner County Detention Center until she went into labor. The court added that upon delivery of her baby, Ms. Bennett was to be discharged from the hospital but that the baby would "stay in [the] State's custody."

DHS next presented testimony from Ms. Bennett's case worker, Terri Berger, who testified that Ms. Bennett did not want to participate in any drug treatment and that her sole comment upon discussing drug treatment was: "How long am I gonna have to stay clean to get my baby back?"

At the conclusion of the hearing, the circuit court ruled:

> All right. I want her returned back to the Detention Center, and I want the prenatal care initiated, especially with ultrasound and prenatal testing.
>
> Yeah, I think that the way it works, the Department — because I put this unborn child in your care, and I've done that this morning, that actually that unborn child is your client. And then, when — the way that payment works, Medicaid will take over if they get her to the hospital as she goes into labor. And then Medicaid will cover the hospital stay, and then she can be discharged any time she wants to leave after the baby's born.
>
> Now, if you find out through your prenatal testing, ultrasounds and other things, that this baby is malformed and has problems such as limbs missing, if there's deformed heart valves, anything that looks truly, truly dire and that the baby might not live at birth, then get back in here and let's discuss the situation. And I might want whatever doctor you take her to to come in and discuss it, as well.

The court noted that the attorney *ad litem* would continue to serve in this case, as would Ms. Bennett's appointed counsel.

On August 30, 2002, the circuit court entered its order holding Ms. Bennett in contempt of court for violating previous court orders that she remain drug-free.[2] The court further found in its order that Ms. Bennett's unborn child was in imminent danger of severe maltreatment and was dependent-neglected, as defined by the Arkansas Juvenile Code. The court ordered that the child be placed in the custody of DHS and further ordered DHS to ensure that Ms. Bennett receive adequate prenatal care and that she be examined by a doctor as soon as possible.

On September 3, 2002, DHS moved to set aside the court's order. DHS asserted that because the fetus had not been born, it was not a juvenile, as defined by the Juvenile Code, and the court lacked jurisdiction to order the fetus into DHS custody as dependent-neglected. In addition, DHS argued that the court lacked jurisdiction to order it to pay for prenatal care. According to DHS, it was Faulkner County that was legally obligated to provide the necessary medical care for the mother because she was incarcerated in the detention center. DHS contended that the Juvenile Code only permits DHS to pay for, or provide services to, a family for the purpose of either reuniting the family or to prevent removal of the child from the home. Because there was no juvenile, as defined by the Juvenile Code, DHS concluded that the court lacked jurisdiction to order DHS to provide services in this case. Finally, DHS maintained that the General Assembly was clear in its statutory definition of "juvenile" and that the circuit court could not change the plain meaning of the statute because that would violate the separation-of-powers doctrine.

On September 10, 2002, the circuit court held a hearing on DHS's motion to set aside the court's order. DHS repeated its arguments and informed the court that Ms. Bennett's unborn fetus was, at that time, between five-and-a-half to six months old.[3]

---

[2] In a related case, submitted for decision by this court on January 9, 2003, *Bennett v. Collier*, No. 02-1327, Ms. Bennett asserted in a petition for a writ of *habeas corpus* that Judge Collier exceeded her authority in ordering her jailed until the birth of her child. This court temporarily stayed that order on December 11, 2002, and Ms. Bennett was released from the custody of the Faulkner County Detention Center.

[3] This court recognizes that the child may have been born as of this writing, thereby rendering this case moot, although there is nothing in the record before this court to

After hearing the arguments of counsel for DHS, counsel for Ms. Bennett, and from Diana Rivers, the child advocate representative, the court made the following ruling:

> Well, I'm going to the let the Supreme Court tell us what to do because this is about the third case I've had just like this in the last year. And, if I'm seeing this many cases, other juvenile judges across the state have got to be seeing just as many, if not more. And I'm finding at this time that the statute which has been cited by the Department, 9-27-303(29) in the Code which gives us the definition of a juvenile is too narrow under these circumstances and, in this Court's opinion, should read ". . . from viability to age of 18." And I'd be really interested to see what the Arkansas Supreme Court would tell us in a case such as this.

An order was entered denying DHS's motion to set aside, and DHS petitioned this court for a writ of prohibition, or, in the alternative, for a writ of *certiorari*.[4]

DHS reiterates the same arguments in support of its petition. It first argues that the circuit court has exclusive jurisdiction over proceedings in which a juvenile, as defined by Ark. Code Ann. § 9-27-303 (Repl. 2002), is alleged to be delinquent or dependent-neglected. DHS adds, however, that this jurisdiction is limited by the Juvenile Code to those instances where a juvenile, who is defined as an individual from birth to age eighteen, is involved and contends that the Code does not give the circuit court any power over a fetus prior to birth. DHS further claims that because an unborn fetus does not meet the definition of a juvenile, it follows that a fetus can not be a dependent-neglected juvenile. DHS also distinguishes the instant case from that of *Aka v. Jefferson Hosp. Ass'n., Inc.*, 344 Ark. 627, 42 S.W.3d 508 (2001), in that for purposes of a wrongful-death action, the General Assembly has authorized an action for the death of a viable fetus. *See* Ark. Code

---

suggest that this is the case. Nevertheless, placing a viable fetus in the custody of DHS is a matter likely to be repeated in other cases, and we will address the issue. *See Nathaniel v. Forrest City Sch. Dist. No. 7*, 300 Ark. 513, 780 S.W.2d 539 (1989).

[4] DHS also filed a notice of appeal from the August 30, 2002 order. The record received by the Clerk of the Supreme Court on December 12, 2002, was a copy of the record in the instant case. The appeal was docketed as No. CA 02-1342.

Ann. § 16-62-102 (Supp. 2001). Finally, DHS urges that at the time the circuit court made its rulings, there was no pending DHS petition for a dependent-neglected case, and the circuit court acted *sua sponte* in a separate case after it had already finalized a parental-termination order in the case of Justin.

The State, on behalf of the circuit court and Judge Collier, responds that the petition for either extraordinary writ should be denied. First, it argues that the circuit court clearly had subject-matter jurisdiction over dependent-neglected proceedings; thus, the court should deny DHS's petition for writ of prohibition. Secondly, it contends that DHS's petition for writ of *certiorari* should be denied as DHS seeks to use that writ as a substitute for appeal, which it cannot do. Moreover, the State claims that DHS advances no interest that would require this court to decide the matter by extraordinary writ. Alternatively, the State urges that a writ of *certiorari* should be denied because Judge Collier had the authority to declare the fetus dependent-neglected. According to the State, the fetus was an individual under the Juvenile Code and was adjudicated dependent-neglected before reaching 18.

Finally, the State argues that DHS ignores Amendment 68 of the Arkansas Constitution and Arkansas' clearly enunciated interest in the well-being of the fetus. The State maintains that as to Ms. Bennett's privacy rights, they are "fairly and constitutionally circumscribed to permit the State to declare the child she intends to carry to term dependent-neglected due to her illegal drug use." The State concludes that given Arkansas' clear policy under Amendment 68 to protect the life of every unborn child, this court should conclude that the State's interest in protecting Ms. Bennett's fetus from illegal drug use is paramount to any privacy rights vested in Ms. Bennett.

*a. Writ of prohibition*

■ ■ This court recently described the blackletter law in this state relating to a writ of prohibition:

> A writ of prohibition is an extraordinary writ that is only appropriate when the court is wholly without jurisdiction. *Ibsen v. Plegge*, 341 Ark. 225, 15 S.W.3d 686 (2000). The writ will not

> be granted unless it is clearly warranted. *Id.* Prohibition is never issued to prohibit a trial court from erroneously exercising its jurisdiction. *Id.* A writ of prohibition cannot be invoked to correct an order already entered. *Arkansas Public Defender Comm. v. Burnett*, 340 Ark. 233, 12 S.W.3d 191 (2000). A writ of prohibition is not directed to the jurisdiction of the individual judge but to the court itself. *Lee v. McNeil*, 308 Ark. 114, 823 S.W.2d 837 (1992).

*Wynne v. State*, 345 Ark. 536, 540, 49 S.W.3d 100, 102 (2001). *See also Travelers Ins. Co. v. Smith*, 329 Ark. 336, 947 S.W.2d 382 (1997).

In the case at hand, the circuit court clearly had subject-matter jurisdiction because a circuit court has exclusive jurisdiction over proceedings in which a juvenile is alleged to be dependent-neglected and in which custody of a juvenile is transferred to DHS. *See* Ark. Code Ann. § 9-27-306 (Repl. 2002). Furthermore, in the instant case, the circuit court in its parental termination order expressly retained jurisdiction over the case and called for a review hearing on November 19, 2002.[5] Moreover, the circuit court had already entered its order finding the fetus to be dependent-neglected, transferring custody of the unborn fetus to DHS, and directing DHS to provide prenatal services to the

---

[5] It is unclear whether the trial court actually intended to retain jurisdiction over Ms. Bennett after entry of the termination order, but that is of no moment. Although there was no formal petition filed leading to the pick-up order, a trial court is permitted by statute to take a juvenile into custody without a warrant and prior to service upon him or her of a petition and notice of a hearing under limited circumstances. *See* Ark. Code Ann. § 9-27-313 (Repl. 2002). This is appropriate where there are clear and reasonable grounds to conclude that the juvenile is in immediate danger, where removal is necessary to prevent serious harm from the juvenile's surroundings, where the parents have not taken action necessary to protect the juvenile from the danger, and where there is no time to petition and obtain a court order prior to taking the juvenile into custody. *See* Ark. Code Ann. § 9-27-315(a)(1)(C) (Repl. 2002). Clearly, the court believed that to be the situation in the instant case for the unborn fetus. The circuit court could not separate Ms. Bennett's unborn fetus, which the court found to be in imminent danger of harm, from Ms. Bennett herself. Accordingly, to take the fetus into custody, the court necessarily had to detain Ms. Bennett as well. Whether the court exceeded its authority in taking Ms. Bennett's unborn fetus into DHS's custody is the very issue presented to this court in the instant case. Ms. Bennett's individual rights as the mother of the unborn fetus and as the subject of incarceration for criminal contempt are at issue in *Bennett v. Collier*, No. 02-1327.

mother on August 30, 2002, prior to the filing of the prohibition petition. Accordingly, a writ of prohibition would be inappropriate in this case, because the circuit court was not wholly without subject-matter jurisdiction and because the circuit court had already taken the action sought to be prohibited. We deny the petition for a writ of prohibition.

*b. Writ of* certiorari

As to a writ of *certiorari*, this court has said the following:

> A writ of certiorari is extraordinary relief, and we will grant it only when there is a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or the proceedings are erroneous on the face of the record. *Cooper Communities, Inc. v. Benton County Circuit Court*, 336 Ark. 136, 984 S.W.2d 429 (1999). Unlike a writ of prohibition, the writ of certiorari can address actions already taken by the lower court. *Oliver v. Arkansas Professional Bail Bonds*, 340 Ark. 681, 13 S.W.3d 156 (2000). In determining its application we will not look beyond the face of the record to ascertain the actual merits of a controversy, or to control discretion, or to review a finding of facts, or to reverse a trial court's discretionary authority. *Juvenile H. v. Crabtree*, 310 Ark. 208, 833 S.W.2d 766 (1992). A writ of certiorari lies only where it is apparent on the face of the record that there has been a plain, manifest, clear, and gross abuse of discretion, and there is no other adequate remedy. *Hanley v. Arkansas State Claims Comm'n*, 333 Ark. 159, 970 S.W.2d 198 (1998). These principles apply when a petitioner claims that the lower court did not have jurisdiction to hear a claim or to issue a particular type of remedy. *Id.*

*Kraemer v. Patterson*, 342 Ark. 481, 485, 29 S.W.3d 684, 686 (2000). *See also Arkansas Democrat—Gazette v. Zimmerman*, 341 Ark. 771, 20 S.W.3d 301 (2000).

The question, then, is whether Judge Collier erred and exceeded her authority and committed a plain, manifest, clear, and gross abuse of her discretion by declaring Ms. Bennett's unborn fetus to be dependent-neglected, by placing custody of the

fetus in DHS, and by assessing the costs of prenatal care against that department. We conclude that she did.

Arkansas Code Annotated § 9-27-303(16) (Repl. 2002) provides several definitions of what constitutes a "dependent-neglected juvenile." However, it is Ark. Code Ann. § 9-27-303(29) (Repl. 2002), that specifically defines the term "juvenile:"

> (29) "Juvenile" means an individual who:
>
> (A) Is from birth to the age of eighteen (18) years, whether married or single;
>
> (B)(i) Is under the age of twenty-one (21) years, whether married or single, who is adjudicated delinquent for an act committed prior to the age of eighteen (18) years, and for whom the court retains jurisdiction.
>
> (ii) In no event shall this person remain within the court's jurisdiction past the age of twenty-one (21) years; or
>
> (C)(i) Is adjudicated dependent-neglected before reaching the age of eighteen (18) years.
>
> (ii) The juvenile may ask the court to retain jurisdiction past his or her eighteenth birthday.
>
> (iii) The court shall grant the request only if the juvenile is engaged in a course of instruction or treatments.
>
> (iv) The court shall retain jurisdiction only if the juvenile remains in instruction or treatment.
>
> (v) The court shall dismiss jurisdiction upon request of the juvenile or when the juvenile completes, leaves, or is dismissed from instruction or treatment.
>
> (vi) In no event shall this person remain within the court's jurisdiction past the age of twenty-one (21) years[.]

Ark. Code Ann. § 9-27-303(29) (Repl. 2002).

 This court recently set forth its standard of review for statutory construction:

> When reviewing issues of statutory interpretation, we are mindful that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Yamaha Motor Corp. v. Richard's Honda Yamaha*, 344 Ark. 44, 38 S.W.3d 356 (2001); *Dunklin v. Ramsay*, 328 Ark. 263, 944 S.W.2d 76 (1997). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory con-

struction. *Burcham v. City of Van Buren*, 330 Ark. 451, 954 S.W.2d 266 (1997). A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *ACW, Inc. v. Weiss*, 329 Ark. 302, 947 S.W.2d 770 (1997). When a statute is clear, however, it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Ford v. Keith*, 338 Ark. 487, 996 S.W.2d 20 (1999); *State v. McLeod*, 318 Ark. 781, 888 S.W.2d 639 (1994). This court is very hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.*

*Cave City Nursing Home, Inc. v. Arkansas Dep't of Human Servs.*, 351 Ark. 13, 21–22, 89 S.W.3d 884 (2002).

In our judgment, the language of § 9-27-303(29)(A) is plain and unambiguous, and it clearly defines "juvenile" as an individual from "birth to age eighteen." An unborn fetus obviously does not fall within this definition as by it very nature, there has been no birth. Subsection (B) is equally inapplicable, contrary to the State's position, as it deals with an individual who has been adjudicated delinquent, and the unborn fetus at issue here has never been adjudicated delinquent. Finally, subsection (C) refers to an individual who has been adjudicated dependent–neglected before reaching the age of eighteen. The paragraphs under subsection (C) specifically refer to "the juvenile," which necessarily takes us back to the definition of individual "from birth to the age of eighteen." Nowhere has the General Assembly suggested that the term "juvenile" encompasses an unborn fetus.

Our conclusion is emphasized by Ark. Code Ann. § 9-27-302 (Repl. 2002), which sets forth the purposes of the Juvenile Code relating to protection and custody of juveniles:

> This subchapter shall be liberally construed to the end that its purposes may be carried out:
>
> (1) To assure that all juveniles brought to the attention of the courts receive the guidance, care, and control, preferably in each juvenile's own home when the juvenile's health and safety are not

at risk, which will best serve the emotional, mental, and physical welfare of the juvenile and the best interest of the state;

(2)(A) To preserve and strengthen the juvenile's family ties when it is in the best interest of the juvenile;

(B) To protect a juvenile by considering the juvenile's health and safety as the paramount concerns in determining whether or not to remove the juvenile from the custody of his or her parents or custodians, removing the juvenile only when the safety and protection of the public cannot adequately be safeguarded without such removal;

(C) When a juvenile is removed from his or her own family, to secure for him or her custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents, with primary emphasis on ensuring the health and safety of the juvenile while in the out-of-home placement; and

(D) To assure, in all cases in which a juvenile must be permanently removed from the custody of his or her parents, that the juvenile be placed in an approved family home and be made a member of the family by adoption;

(3) To protect society more effectively by substituting for retributive punishment, whenever possible, methods of offender rehabilitation and rehabilitative restitution, recognizing that the application of sanctions which are consistent with the seriousness of the offense is appropriate in all cases; and

(4) To provide means through which the provisions of this subchapter are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced.

Although § 9-27-302 dictates that the subchapter shall be "liberally construed," the purpose of the Juvenile Code is made crystal clear: to protect juveniles, preferably in each juvenile's home, to protect and strengthen familial ties, to protect a juvenile's health and safety when determining whether to remove the juvenile from the custody of his parents or custodian, and to secure worthwhile care upon removal from custody. Again, nowhere in § 9-27-302 is it suggested, or even implied, that its provisions are applicable to an unborn fetus still in its mother's womb.

Our conclusion in the instant case dovetails with a similar conclusion reached by the Supreme Court of Wisconsin in the

case of *State ex rel. Angela M.W. v. Kruzicki*, 209 Wis. 2d 112, 561 N.W.2d 729 (1997). Angela M.W. was carrying a viable fetus due on October 4, 1995, and blood tests had confirmed that she was using drugs. On September 5, 1995, the county Department of Health and Human Services moved to have the unborn child taken into custody. The motion requested an order to remove the unborn child from his present custody and to place it in protective custody. On September 6, 1995, an order was issued by the juvenile court to detain the unborn child and transport it to the local hospital for inpatient treatment and protection. The order further noted that "[s]uch detention will by necessity result in the detention of the unborn child's mother. . . ." *Angela M.W.*, 209 Wis. 2d at 118, 561 N.W.2d at 732. That same day, the county filed a CHIPS (child alleged to be in need of protection or services) petition, alleging that the unborn fetus was in need of protection due to exposure from its mother's prenatal drug use. Detention hearings were held, and a plea hearing was scheduled on the CHIPS petition for September 13, 1995. On that date, Angela M.W. filed an original action in the Wisconsin Court of Appeals seeking a writ of *habeas corpus*, or, in the alternative, a supervisory writ. The court of appeals denied the writs, and Angela M.W. was permitted review by the Wisconsin Supreme Court.

In the resulting decision, the supreme court noted that the case was not about the propriety or morality of the mother's conduct; nor was the case about the mother's reproductive rights. Rather, the supreme court concluded that the case was one of statutory construction, and specifically concerned whether a viable fetus was included within the definition of "child" under Wisconsin statutory law. The court first discussed the fact that different courts had given different meanings to the terms "person" and "child." Observing that it had previously held that a viable fetus was a "person" for purposes of the Wisconsin wrongful-death statute, the supreme court alluded to the fact that the United States Supreme Court had held that a fetus was not a person under the Fourteenth Amendment of the United States Constitution. The Wisconsin statute defined "child" as "a person who is less than 18 years of age," but the court emphasized that courts

in other states had arrived at different interpretations of similar statutory language:

> Perhaps most compelling, courts in other states have arrived at different interpretations of statutory language nearly identical to that in § 48.02(2). *Compare State v. Gray*, 62 Ohio St. 3d 514, 584 N.E.2d 710, 713 (1992) (holding that a third trimester fetus is not "a child under eighteen years of age," as provided in Ohio's child endangerment statute), *with Whitner v. State*, No. 24468, 1996 WL 393164, at *3, — S.C. ——, ——, — S.E.2d —— (S.C. July 15, 1996) (concluding that a viable fetus is a "person under the age of eighteen," pursuant to South Carolina's child abuse and endangerment statute).

*Id.* at 123, 561 N.W.2d at 734.

The Wisconsin Supreme Court concluded that the term "child," as defined by the statute, was ambiguous. After reviewing the legislative history of the Wisconsin statute and considering the context of the statute in conjunction with other relevant sections of the Wisconsin code, the supreme court observed that those sections would be rendered absurd if "child" were interpreted to include a viable fetus. The court's reasoning included the following: (1) the court had been historically wary of expanding the scope of the Children's Code by reading into it language not expressly included within the statutory text; (2) while the chapter was to be liberally construed, the court would not read into statutes legislative intent that was not evident and expand the definition of child to the moment after conception; and (3) the court's prior decisions placing limited legal duties upon a third person, such as wrongful-death decisions, should not be read to "confer full legal status upon a fetus." *Id.* at 130, 561 N.W.2d at 737. The Wisconsin Supreme Court ultimately held that the Wisconsin legislature did not intend to include a fetus within the Children's Code definition of "child" and reversed the court of appeal's denial of a writ of *habeas corpus*.

In her brief, Judge Collier relies on the case of *Whitner v. State*, 328 S.C. 1, 492 S.E.2d 777 (1997), in support of her argument that "it would be absurd to recognize the viable fetus as a person for purposes of homicide laws and wrongful-death statutes but not for purposes of statutes proscribing child abuse." In

*Whitner,* the South Carolina Supreme Court held that a viable fetus was a "child." However, South Carolina's definition of child was different from Arkansas' statutory definition of "juvenile." The South Carolina statute provided that a "child" is a "person under the age of eighteen." *Id.* at 6, 492 S.E.2d at 779 (quoting S.C. Code Ann. § 20-7-30(1) (1985)). On the other hand, the Arkansas Juvenile Code, as already stated, defines "juvenile" as an individual "from birth to the age of eighteen[,]" regardless of which subsection of the definition is used. Even using subsection (C) of § 9-27-303(29), as urged by Judge Collier, eventually brings us back to the definition of "juvenile." We must construe all parts of the statute together, and that requires us to use the definition under subsection (A), which clearly and unambiguously says "birth." In short, *Whitner v. State, supra,* is not persuasive authority for interpreting our statute.

We conclude, as did the Wisconsin Supreme Court in *State ex rel. Angela M.W. v. Kruzicki, supra,* that this is a case of statutory construction, and merely because (1) this court has recognized a viable fetus to be a "person" within the meaning of the Arkansas wrongful-death statute, *see Aka v. Jefferson Hosp. Ass'n., Inc., supra,* and (2) the General Assembly has seen fit to include the death of a fetus within the definition of victims of a homicide in the Criminal Code, *see* Ark. Code Ann. § 5-1-102(13)(B)(i) (Supp. 2001), this does not mandate that the definition of the term "juvenile" in our Juvenile Code be changed to include an unborn fetus. Viable or not, the plain meaning of our term "juvenile" does not include an unborn child, but rather an individual "from birth to the age of eighteen." Nor does the purpose section of the Juvenile Code, as set forth by our General Assembly in § 9-27-302, either expressly or by implication, suggest that the term "juvenile" embraces an unborn fetus. Indeed, had the General Assembly intended to include an unborn child in its definition of "juvenile," it could have done so as it did in the definition of "person" in our Criminal Code in § 5-1-102(13)(B)(i). It did not.

Finally, we disagree with the State that Amendment 68 to the Arkansas Constitution, which establishes a public policy to protect the life of every unborn child, requires an amendment

to the legislature's statutory definition of juvenile and conveys authority to state agencies to take custody of fetuses. Nor do we agree with the State that the extraordinary writ of *certiorari* is being used in this case as a substitute for appeal. It is obvious to this court that before an appeal of this issue could have been resolved, the fetus would have been born. We view *certiorari* as the appropriate vehicle for bringing the matter to this court for resolution.

We conclude that Judge Collier clearly exceeded her statutory authority and that, as a consequence, her order placing the fetus in the custody of DHS and requiring that department to render prenatal care constituted a plain, manifest, clear, and gross abuse of discretion. Accordingly, the writ of *certiorari* should issue.

Writ of prohibition denied. Writ of *certiorari* granted.