BAPTIST HEALTH d/b/a Baptist Health Rehabilitation Institute
*v.* The CIRCUIT COURT of PULASKI COUNTY
and Evelyn Reichen, by and Through her Next Friend
and Attorney in Fact Sheila Hinds

07-960                                              284 S.W.3d 499

Supreme Court of Arkansas
Opinion delivered May 22, 2008

*Friday, Eldredge & Clark, LLP*, by: *Donald H. Bacon, Laura Hensley Smith*, and *T. Michelle Ator*, for petitioner.

*Dustin McDaniel*, Att'y Gen., by: *Carolyn Boies Nitta*, Ass't Att'y Gen., for respondent.

*Dover Dixon Horne PLLC*, by: *Michael G. Smith*, for separate respondent Evelyn Reichen.

*Wilkes & McHugh, P.A.*, by: *Susan Nichols Estes* and *David L. Eanes*, for amicus curiae Arkansas Advocates for Nursing Home Residents.

*Elisa M. White*, for amicus curiae Arkansas Hospital Association.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for amicus curiae Arkansas Trial Lawyers Association.

*The Brad Hendricks Law Firm*, brief filed by amicus curiae George Wise, Jr.

TOM GLAZE, Justice. Baptist Health, doing business as Baptist Health Rehabilitation Institute (BHRI), has petitioned this court for a writ of certiorari directed to the Circuit Court of Pulaski County. BHRI contends that the circuit court has acted in excess of its jurisdiction in ordering it to disclose certain documents that the hospital contends are privileged.

Respondent, 79-year-old Evelyn Reichen, presented to the emergency room at Baptist Hospital in Little Rock on November 4, 2004, after injuring her shoulder in a fall in a parking lot. She was admitted to the hospital and underwent surgery on her shoulder on November 9, 2004. Two days later, she was admitted to BHRI for rehabilitation. Reichen's admitting physician stated in his orders that she should be monitored for her safety and daily living activities and would need assistance with ambulation. During her initial assessment, BHRI staff noted that Reichen was fragile and would require assistance for safe movement. An Assessment History Report dated November 14, 2004, stated that she was a fall risk due to weakness, and it also noted that sedation was among her medication side effects. The report also reflected that she should have side rails on her bed.

On November 22, 2004, Reichen developed an earache and was given Ambien and Darvocet. An entry on her chart that night stated "fall risk IDs in place — supervise toilet." Around 11:00 that night, Reichen needed to go to the bathroom and called for a nurse, but no one responded to her call. Sometime around 3:00 the next morning, Reichen was discovered on the floor of the bathroom, where she had fallen. A CT scan performed the next morning revealed that she had broken her left hip in the fall; she underwent a hip replacement surgery on November 23, 2004.

Reichen and her family sued BHRI on August 10, 2006, and BHRI filed an answer on August 22, 2006. On May 10, 2007, Reichen filed a motion for order compelling discovery in which she sought, among other things, "performance enhancement forms" that had not previously been disclosed. BHRI had previously objected to disclosing these forms on the grounds that they were protected by the "peer review and quality assurance privileges" found in Ark. Code Ann. § 16-46-105 (Repl. 1999). BHRI responded to Reichen's motion to compel on May 24, 2007, again asserting that the materials she sought were protected by § 16-46-105.

The trial court held a hearing on Reichen's motion to compel and, on August 31, 2007, entered a protective order in which it ordered BHRI to provide Reichen with copies of the occurrence report related to her fall. The court also ordered BHRI to provide Reichen with copies of reports of falls at BHRI for the six-month time period prior to November 23, 2004 (the "prior fall material"). The court also stated that it would review in camera any of the prior fall material deemed by BHRI to be protected by the quality assurance or peer review statute.

On September 17, 2007, the circuit court entered an order in which it stated that, after examining the "occurrence reports" *in camera*, it had determined that the "information contained on page one of the document is clearly the type of information typically contained in an incident report." Because Ark. Code Ann. § 16-46-105 did not apply to "incident reports" and "other records," the court found that the statute did not protect the materials and ordered BHRI to produce the documents for discovery. That same afternoon, BHRI filed the instant petition for writ of certiorari, asking this court to vacate and reverse the circuit court's order compelling discovery.

BHRI argues that it is entitled to a writ of certiorari because the materials the trial court ordered it to disclose are privileged under Ark. Code Ann. § 16-46-105, which provides as follows:

> The proceedings, minutes, records, or reports of organized committees of hospital medical staffs or medical review committees of local medical societies having the responsibility for reviewing and evaluating the quality of medical or hospital care, and any records, other than those records described in subsection (c) of this section, compiled or accumulated by the administrative staff of such hospitals in connection with such review or evaluation, together with all communications or reports originating in such committees, *shall not be subject to discovery pursuant to the Arkansas Rules of Civil Procedure* or the Freedom of Information Act of 1967, § 25-19-101 et seq., *or admissible in any legal proceeding and shall be absolutely privileged communications.*

Ark. Code Ann.§ 16-46-105(a)(1)(A) (Repl. 1999) (emphasis added). BHRI contends that the trial court's order compelling the production of the documents is in clear contradiction of the statute and that, absent extraordinary relief, it would suffer irreparable harm.

The standard for granting a writ of certiorari is well settled in Arkansas. A writ of certiorari is extraordinary relief, and there are two requirements that must be satisfied in order for this court to grant the writ. The first requirement is that there can be no other adequate remedy but for the writ of certiorari. Second, a writ of certiorari lies only where (1) it is apparent on the face of the record that there has been a plain, manifest, and gross abuse of discretion, or (2) there is a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or the proceedings are erroneous on the face of the record. *See Jordan v. Circuit Court of Lee County*, 366 Ark. 326, 331, 235 S.W.3d 487, 491 (2006) (citing *Arkansas Game & Fish Comm'n v. Herndon*, 365 Ark. 180, 226 S.W.3d 776 (2006)).

In addition, this court has held that, in determining the applicability of the writ, we will not look beyond the face of the record to ascertain the actual merits of a controversy, or to control discretion, or to review a finding of fact, or to reverse a trial court's discretionary authority. *Jordan*, 366 Ark. at 331, 235 S.W.3d at 491; *see also Chiodini v. Lock*, 373 Ark. 88, 281 S.W.3d 728 (2008).

In this case, BHRI essentially seeks a writ of certiorari that would reverse the trial court's ruling on a discovery question. This court has, on several occasions, specifically held that a petition for

writ of certiorari is not an appropriate remedy when a party seeks to reverse a discovery order. Most recently, we addressed this precise issue in *Chiodini v. Lock*, in which the petitioner sought a writ of certiorari to reverse the circuit court's rulings on his numerous discovery requests. In denying the request for the extraordinary writ, this court wrote as follows:

> Our court has clearly held that a discovery order is not the proper subject for an extraordinary writ because the trial court's jurisdiction allows it to decide such discovery issues. *See Ford Motor Co. v. Harper*, 353 Ark. 328, 107 S.W.3d 168 (2003) (Glaze, J., concurring) (citing *Lupo v. Lineberger*, 313 Ark. 315, 855 S.W.2d 293 (1992)). In *Ballard v. Martin*, 349 Ark. 54, 79 S.W.3d 838 (2002), this court noted that a trial court has broad discretion in matters pertaining to discovery, and the exercise of that discretion will not be reversed by this court absent an abuse of discretion that is prejudicial to the appealing party.
>
> . . . . Because a trial court's discovery ruling is a matter well within the court's jurisdiction *and* discretion, a writ of certiorari will not lie to correct any perceived error in the court's ruling.

*Chiodini*, 373 Ark. at 93, 281 S.W.3d at 732 (emphasis in original).

This court has denied petitions for writs of certiorari even when the alleged discovery violation pertains to materials that the petitioning party claims are privileged. In *Arkansas State Highway Commission v. Ponder*, 239 Ark. 744, 393 S.W.2d 870 (1965), Justice George Rose Smith wrote that, even where a party objects to discovery on the grounds that the information sought is privileged, certiorari will not lie:

> This petitioner insists that if it complies with the trial court's order, under protest, its remedy by eventually taking an appeal from the final judgment will be inadequate, for, even if we should hold that the discovery order was an error, the harm will already have been done. *In effect it is argued that if the cat is ever let out of the bag it can never be gotten back into the bag. An identical argument can be made whenever a discovery order is objected to. To sustain the argument in this case would mean that we should have to make a similar piecemeal decision whenever an application for discovery is unsuccessfully resisted at the trial level. We have repeatedly held that we cannot review interlocutory orders in this fashion.*

*Ponder*, 239 Ark. at 745–46, 393 S.W.2d at 871 (emphasis added); *see also Farm Servs. Coop. v. Cummings*, 262 Ark. 810, 561 S.W.2d 317 (1978).

In its petition, BHRI urges that, if the reports at issue in this case are ordered to be disclosed through discovery, it will have a chilling effect on hospitals and medical care providers, in that hospitals will be reluctant to engage in the peer review and quality assurance process if they fear the materials will not be absolutely privileged. In essence, BHRI maintains that, once the cat has been let out of the bag, it cannot be put back; harm will have been done that cannot be repaired by taking an appeal. However, BHRI's argument is precisely the same argument that the court rejected in *Ponder*, and we cannot agree that the writ will lie in these circumstances.

BHRI cites *HCA Health Services of Midwest, Inc. v. National Bank of Commerce*, 294 Ark. 525, 745 S.W.2d 120 (1988), in support of its argument that the reports at issue in this case are privileged and should not have been ordered to be disclosed.[1] However, that case is distinguishable in at least two important respects: first, that case came before this court as an appeal, not as a petition for writ of certiorari; and second, the issue on appeal in *HCA* did not arise from a discovery matter. BHRI's reliance on *HCA* is thus inapposite. Moreover, BHRI cites *HCA* for the proposition that the documents at issue fall under the protection of § 16-46-105; however, to decide this question would require us to delve into the underlying merits of the controversy, which this court has frequently held is improper in deciding whether to issue the writ. *See Chiodini v. Lock, supra; Jordan v. Circuit Court of Lee County, supra; Ark. Dep't of Human Servs. v. Collier*, 351 Ark. 506, 95 S.W.3d 772 (2003).

In this case, BHRI appears to have conflated the circuit court's jurisdiction, or its authority to act, with the court's error in interpreting a statute. This precise issue was addressed in *Arkansas Department of Human Services v. Circuit Court of Sebastian County*, 363 Ark. 389, 214 S.W.3d 856 (2005). In that case, the court explained the distinction as follows:

---

[1] In *HCA, supra,* this court held that a nurse's written response to a personnel action report fell within the ambit of the peer-review and quality-assurance privilege and should not have been admitted into evidence at trial. *See HCA Health Services*, 294 Ark. at 534, 745 S.W.2d at 125.

> The rule of almost universal application is that there is a distinction between want of jurisdiction to adjudicate a matter and a determination of whether the jurisdiction should be exercised. Jurisdiction of the subject matter is power lawfully conferred on a court to adjudge matters concerning the general question in controversy. It is power to act on the general cause of action alleged and to determine whether the particular facts call for the exercise of that power. Subject matter jurisdiction does not depend on a correct exercise of that power in any particular case. If the court errs in its decision or proceeds irregularly within its assigned jurisdiction, the remedy is by appeal or direct action in the erring court. If it was within the court's jurisdiction to act upon the subject matter, that action is binding until reversed or set aside.

*Id.* at 393, 214 S.W.3d at 859 (quoting *Young v. Smith*, 331 Ark. 525, 529, 964 S.W.2d 784, 786 (1998)).

■ Here, it is clear that the circuit court *had jurisdiction* to enter a discovery order; what is at issue is whether the circuit court correctly *interpreted a statute and applied its interpretation* of that statute to the facts before it. Certiorari simply will not lie in these circumstances. *See id.* at 394, 214 S.W.3d at 860.

As a final matter, we note that BHRI, in its reply brief, attempts to rely on *Arkansas Department of Human Services v. Collier*, 351 Ark. 506, 95 S.W.3d 772 (2003), in support of its argument that an erroneous interpretation or application of a statute may warrant a writ of certiorari. However, *Collier* is distinguishable on its facts. There, the Faulkner County Circuit Court ordered an unborn fetus to be placed in the custody of the Department of Human Services and further ordered DHS to pay for the fetus's mother's prenatal care. DHS petitioned for a writ of certiorari, alleging that because there was no "juvenile," as defined by the Juvenile Code, the court lacked jurisdiction to order the fetus into DHS custody as dependent-neglected or to order DHS to pay for prenatal care. *Collier*, 351 Ark. at 512, 95 S.W.3d at 775.

This court agreed with DHS. Noting that the Juvenile Code defined a "juvenile" as an individual "from birth to the age of eighteen years," *see* Ark. Code Ann. § 9-27-303(29) (Repl. 2002), the court held that, in the context of a dependency-neglect case, an unborn fetus was not a "juvenile." 351 Ark. at 522, 95 S.W.3d at 781. Because the Juvenile Code only gave the courts jurisdiction

over a "juvenile,"[2] the court clearly acted in excess of its jurisdiction in placing the fetus in the custody of DHS and requiring DHS to provide prenatal care. *Id.* at 523, 95 S.W.3d at 782.

As mentioned above, in the instant case, BHRI argues that *Collier* stands for the proposition that an erroneous interpretation of a statute can justify the issuance of the writ. However, that argument simply misses the mark. *Collier* does not mean that certiorari is proper to correct an improper statutory interpretation; rather, it held that, where a statute does not give a court *jurisdiction to act*, certiorari can be used to control acts the court takes that are in excess of its jurisdiction.

BHRI goes further in its reply and specifically asks this court to "interpret the law." In essence, BHRI is asking this court to interpret the statute at issue and determine whether the trial court properly construed and applied it — that is, it wants us to address the merits of the underlying discovery ruling. However, that is exactly what the court will not do on a petition for writ of certiorari. *See, e.g., Jordan v. Circuit Court of Lee County, supra* ("we will not look beyond the face of the record to determine the actual merits of a controversy").

Petition for writ of certiorari denied.

---

[2] Ark. Code Ann. § 9-27-305 (Repl. 2008) provides that "[a]ny *juvenile* within this state may be subjected to the care, custody, control, and *jurisdiction* of the circuit court." (Emphasis added.)