Cite as 2023 Ark. 94

# SUPREME COURT OF ARKANSAS

**No.** CV-22-635

|  |  |
|---|---|
| MONSANTO COMPANY | **Opinion Delivered:** June 8, 2023 |
| | PETITION FOR WRIT OF CERTIORARI OR, IN THE ALTERNATIVE, A WRIT OF PROHIBITION, WRIT OF MANDAMUS, OR OTHER SUPERVISORY WRIT |
| PETITIONER | |
| V. | |
| CORNELIUS KILGORE AND LABOMMIE KILGORE | |
| | PETITION DENIED. |
| RESPONDENTS | |

**JOHN DAN KEMP, Chief Justice**

Monsanto Company petitions this court for a writ of certiorari or, in the alternative, a writ of prohibition, writ of mandamus, or other supervisory writ. It argues that the Drew County Circuit Court misinterpreted the Arkansas Rules of Civil Procedure in this discovery matter, abused its discretion, and acted beyond its jurisdiction in allowing the deposition of Werner Baumann, a citizen and resident of Germany. We deny the petition.

I. *Facts*

In October 2021, respondents Cornelius and Labommie Kilgore (the Kilgores) filed a complaint in the Drew County Circuit Court against Monsanto Company, Walmart, Inc., and Walmart Stores Arkansas, LLC, alleging that Mr. Kilgore had been diagnosed with non-Hodgkin's lymphoma in November 2018 after two decades of exposure to Monsanto's Roundup-branded products, which he had purchased at Walmart. The Kilgores asserted a

design-defect claim against Monsanto, as well as claims against both Monsanto and Walmart for failure to warn, negligence, breach of implied warranties, violation of the Arkansas Deceptive Trade Practices Act, and loss of consortium.

On April 27, 2022, the Kilgores served Monsanto with a deposition notice pursuant to Arkansas Rules of Civil Procedure 26 and 30 for Baumann, the chief executive officer of Bayer AG, Monsanto's parent corporation.[1] The notice identified Baumann as Monsanto's "managing agent" and stated that he would be questioned on the following topics:

> Monsanto's position on the safety of Roundup® Products and their active ingredients, the design of Roundup® Products, Monsanto's plan to redesign Roundup® Products, Monsanto's plan to relabel Roundup® Products, Monsanto's view of the economic value of Roundup® Products cases, and Monsanto's plan to resolve litigation arising out of Roundup® Products, including this lawsuit.

On May 17, Monsanto filed a motion for protective order requesting that the circuit court strike the notice of deposition. It argued that Baumann could not be deposed under Rule 30 because he was not Monsanto's managing agent. Instead, Monsanto claimed that the Kilgores needed to seek a subpoena in order to depose him, and because he resides in Germany, "any subpoena issued to him under Rule 45 would be outside the Court's jurisdiction and instead would be governed by the requirements of the Hague Convention." Monsanto also argued that Baumann's deposition is not permitted under the "apex" doctrine.

Following the hearing, the circuit court entered an order on August 19 denying Monsanto's motion for protective order. It found that "there is certainly enough evidence

---

[1]On May 31, 2023, counsel for Monsanto informed this court by letter to our clerk that "Baumann's last day with Bayer AG is today, May 31, 2023."

to believe that Plaintiffs have met the threshold burden of establishing that Mr. Baumann is a managing agent of Monsanto." The circuit court further noted that the apex doctrine has not been adopted in Arkansas or in the Eighth Circuit, and it refused to "apply a doctrine that has not been adopted by the courts above it[.]" On August 25, Monsanto filed a motion for reconsideration asking that the circuit court (1) modify its order, grant Monsanto's request for a protective order, and strike the Kilgores' notice of deposition of Baumann or, in the alternative, (2) modify its order to require the Kilgores to proceed in accordance with the requirements of the Hague Convention and in conformity with German law. On October 3, the circuit court denied Monsanto's motion for reconsideration.

On October 10, Monsanto filed in this court a petition for writ of certiorari or, in the alternative, a writ of prohibition, writ of mandamus, or other supervisory writ. It argued that the circuit court abused its discretion and acted in excess of its jurisdiction, thereby warranting a grant of certiorari in three ways: (1) by finding that Baumann, "the CEO of Monsanto's foreign indirect parent corporation (nine tiers removed)," is Monsanto's "managing agent" who can be deposed via a Rule 30 deposition notice; (2) by compelling Baumann's deposition pursuant to Rule 30, thereby ignoring or circumventing the procedures set forth in the Hague Convention; and (3) by concluding that Baumann's deposition "can proceed under the apex doctrine and/or a conventional Rule 26(c) analysis." We took Monsanto's petition as a case and granted a limited stay of proceedings pending our review.

## II. *Writ of Certiorari*

A writ of certiorari is extraordinary relief. *Chiodini v. Lock*, 373 Ark. 88, 93, 281 S.W.3d 728, 732 (2008). There are two requirements that must be satisfied in order for this court to grant a writ of certiorari. *Ark. Found. for Med. Care v. Saline Cnty. Cir. Ct.*, 2012 Ark. 372, at 3, 423 S.W.3d 542, 544. First, there can be no other adequate remedy but for the writ of certiorari. *Id.*, 423 S.W.3d at 544. Second, a writ of certiorari lies only when (1) it is apparent on the face of the record that there has been a plain, manifest, clear, and gross abuse of discretion, or (2) there is a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or the proceedings are erroneous on the face of the record. *Id.* at 4, 423 S.W.3d at 544. This court has also held that, in determining the applicability of the writ, we will not look beyond the face of the record to ascertain the actual merits of a controversy, or to control discretion, or to review a finding of fact, or to reverse a circuit court's discretionary authority. *Baptist Health v. Cir. Ct. of Pulaski Cnty.*, 373 Ark. 455, 458, 284 S.W.3d 499, 502 (2008).

This court has, on several occasions, specifically held that a petition for writ of certiorari is not an appropriate remedy when a party seeks to reverse a discovery order. *Id.* at 458–59, 284 S.W.3d at 502; *see also Chiodini*, 373 Ark. at 93, 281 S.W.3d at 732 ("Because a trial court's discovery ruling is a matter well within the court's jurisdiction *and* discretion, a writ of certiorari will not lie to correct any perceived error in the court's ruling." (emphasis in original)). In *Chiodini*, for example, we denied a petition for writ of certiorari where the petitioner challenged the interpretation and application of Rule 36 of the Arkansas Rules of

Civil Procedure. *Id*. at 92–93, 281 S.W.3d at 732. Subsequently, in *Baptist Health*, this court stated that

> it is clear that the circuit court *had jurisdiction* to enter a discovery order; what is at issue is whether the circuit court correctly *interpreted a statute and applied its interpretation* of that statute to the facts before it. Certiorari simply will not lie in these circumstances.

373 Ark. at 461, 284 S.W.3d at 504 (emphasis in original).

Here, in its petition, Monsanto does not assert that the circuit court lacked the ability to rule on the discovery motion before it. Rather, Monsanto contends that (1) the circuit court erroneously interpreted Rule 30, resulting in the court ignoring or circumventing the procedures set forth in the Hague Convention and (2) its erroneous interpretation of Rule 26(c) and refusal to adopt the apex doctrine will subject Baumann and Monsanto to "annoyance, embarrassment, oppression, or undue burden or expense." Ark. R. Civ. P. 26(c). These issues of interpretation and application are similar to those presented in *Chiodini* and *Baptist Health*, and we have said certiorari will not lie in these circumstances. "[T]o decide [these] question[s] would require us to delve into the underlying merits of the controversy, which this court has frequently held is improper in deciding whether to issue the writ." *Baptist Health*, 373 Ark. at 460, 284 S.W.3d at 503.

Monsanto argues that its petition is appropriate for certiorari review pursuant to this court's holding in *Cooper Tire & Rubber Co. v. Phillips County Circuit Court*, 2011 Ark. 183, 381 S.W.3d 67. There, this court granted a petition for writ of certiorari "where the issue was not a 'mere' discovery issue but involved another area of law that would be impacted by the resolution of the discovery matter." *Id*. at 6, 381 S.W.3d at 71 (quoting *Ark. Democrat-Gazette, Inc. v. Brantley*, 359 Ark. 75, 79, 194 S.W.3d 748, 751 (2004)). Monsanto

5

asserts that, although the order under review here is nominally a discovery order, the circuit court's decision implicates the scope of the Hague Convention and the apex doctrine and thus reaches far beyond a mere discovery dispute. It contends that this case is similar to *Cooper Tire* and appropriate for certiorari review. We disagree.

In *Cooper Tire*, the petition for writ of certiorari sought to limit a discovery request on grounds that it sought protected trade secrets. *Id*. at 7–8, 381 S.W.3d at 71–72; *see also Brantley*, 359 Ark. at 79, 194 S.W.3d at 751 (granting petition for writ of certiorari following a circuit court's refusal to quash a subpoena that involved a unique copyright issue and potential copyright infringement). We have subsequently limited the holdings in *Cooper Tire* and *Brantley* because those cases "dealt specifically with a very narrow issue of intellectual property law and did not establish a broad exception that would allow for interlocutory review of any alleged privileged information." *Ark. Found. for Med. Care*, 2012 Ark. 372, at 6, 423 S.W.3d at 545.

We reiterate that a writ of certiorari is extraordinary relief. We decline to expand its scope to address the interpretation and application issues in this discovery matter. To decide these questions would require us to delve into the underlying merits of the controversy, which is improper in deciding whether to issue the writ. *Baptist Health*, 373 Ark. at 460, 284 S.W.3d at 503.

### III. *Writ of Prohibition and Writ of Mandamus*

Finally, Monsanto requests alternative relief in the form of a writ of prohibition or writ of mandamus. This court has previously held that because issues of discovery are squarely within a circuit court's jurisdiction, a writ of prohibition will not lie to solve a

discovery problem. *Monticello Healthcare Ctr., LLC v. Goodman*, 2010 Ark. 339, at 17, 373 S.W.3d 256, 268. Further, the purpose of a writ of mandamus is to enforce an established right or to enforce the performance of a duty. *Manila Sch. Dist. No. 15 v. Wagner*, 357 Ark. 20, 26, 159 S.W.3d 285, 290 (2004). Here, Monsanto seeks to control the circuit court's exercise of its discretion in this discovery matter. Mandamus will not lie for this purpose. *Id.*, 159 S.W.3d at 290. Accordingly, we deny Monsanto's alternative requests for a writ of prohibition and writ of mandamus.

Petition denied.

WOOD, WOMACK, and WEBB, JJ., dissent.

**RHONDA K. WOOD, Justice, dissenting**. The majority states that we must deny the writ because it involves little more than a routine discovery dispute. I disagree. We have granted writs that implicate discovery issues, particularly when the resolution intersects with other significant legal issues.[1] Because this case implicates significant legal issues, including principles of international comity, and the circuit court committed a plain and manifest abuse of discretion in doing so, we should grant relief.

I.  *Writ as Remedy*

While a writ of certiorari is not an appropriate remedy in routine discovery disputes, there are exceptions.[2] For example, in *Cooper Tire*, defendant, a tire manufacturer, moved

---

[1]*See Cooper Tire & Rubber Co. v. Phillips Cnty. Cir. Ct.*, 2011 Ark. 183, 381 S.W.3d 67.

[2]*Compare, e.g.*, *Baptist Health v. Cir. Ct. of Pulaski Cty.*, 373 Ark. 455, 284 S.W.3d 499 (2008), *with Cooper Tire & Rubber Co.*, 2011 Ark. 183, 381 S.W.3d 67; *Ark. Democrat-Gazette, Inc. v. Brantley*, 359 Ark. 75, 194 S.W.3d 748 (2004).

for a protective order to limit discovery requests for trade secrets.[3] This court recognized that it would grant a writ of certiorari involving discovery orders only "where the issue is not merely the resolution of a discovery matter but how that resolution interacts with [other laws]."[4] Applying that rule, the *Cooper Tire* court granted the writ because the discovery issue implicated state and federal law protecting trade secrets.[5]

This case, like *Cooper Tire*, raises discovery issues that not only intersect with important state and federal law but also extend further and implicate international law and policy. If *Cooper Tire* justified a writ, certainly this writ is justified. This circuit court entered an extraordinary order compelling the foreign CEO of a nonparty to appear for a deposition in another country. The circuit court's decision implicates foreign discovery and international comity, particularly how our courts treat discovery on foreign executives and, in turn, how foreign countries may treat discovery on our citizens. The serious legal and policy considerations are compelling and require extraordinary relief and thus exercise of an extraordinary writ. This is no ordinary discovery dispute.

Once we determine a writ is the appropriate avenue of relief, we must determine whether the writ lies. It does. On the face of the record, the circuit court committed two plain, manifest, and gross abuses of discretion. The circuit court first abused its discretion in denying Monsanto's motion for protective order, and then it exacerbated that error by failing to follow federal precedent and consider the Hague Convention.

---

[3]*Cooper Tire & Rubber Co.*, 2011 Ark. 183, at 2–3, 381 S.W.3d at 69.

[4]*Id*. at 6, 381 S.W.3d at 71.

[5]*Id*. at 10, 381 S.W.3d at 74.

## II. *Protective Order*

The circuit court's first abuse of discretion was its denial of Monsanto's protective order. Plaintiffs noticed the deposition of Mr. Baumann but did not subpoena him. Under the plain language of Rule 30(a)–(b)(1), a deposition subpoena is unnecessary only if Mr. Baumann is a "party."[6] Mr. Baumann is not a party. He is neither a current nor a former employee of Monsanto. And as the CEO of Monsanto's indirect parent corporation, Bayer, he is not under Monsanto's control.[7]

Plaintiffs argue that Mr. Baumann is Monsanto's managing agent for purpose of this litigation. Yet under the plain language of Rule 30(b)(6), the designation of a "managing agent" is left to the discretion of the organization being deposed, not the party seeking to depose a corporation's managing agent.

> A party may in his notice and in the subpoena name as the deponent a public or private corporation . . . . In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf and may set forth, for each person designated, the matters on which he will testify. A subpoena shall advise a non–party organization of its duty to make such a designation.[8]

Instead of applying this rule, the circuit court seemed to rely on *Hensley v. Computer Sciences Corp.*, 2006 WL 662463, an Arkansas trial court opinion with no precedential value

---

[6]Ark. R. Civ. P. 30(a) (2022).

[7]According to a filing from Monsanto's counsel, Mr. Baumann is no longer Bayer's CEO.

[8]Ark. R. Civ. P. 30(b)(6).

involving whether the former employee of the defendant qualified as a managing agent. Baumann is neither.

Additionally, even when considering whether a person is a managing agent, courts look to "his or her duties and responsibilities *respecting the subject matter of the litigation*."[9] On the face of the record, plaintiffs did not allege Baumann participated in any decisions involving the design or labeling of Roundup. Indeed, Bayer bought Monsanto after the decisions pertinent to the design or labeling of the Roundup products occurred and after plaintiff's exposure to Roundup. Although the record suggests Baumann has made statements about the resolution of the Roundup litigation and the redesign of the product, those statements involve Bayer's post hoc assessment of the litigation and the parent company's actions in response to litigation. And the parent company is not a party to the case.

## III.  *Hague Convention*

The circuit court committed its second plain, manifest, and gross abuse of discretion when it failed to follow binding federal precedent requiring it to directly consider and analyze whether it should use the Hague Convention[10] for Mr. Baumann's deposition. In 1970, many nations joined the United States in ratifying the Hague Convention. Its purpose was to establish procedures for taking evidence abroad.[11] And although the Supreme Court

---

[9]*Calderon v. Experian Info. Sols., Inc.*, 287 F.R.D. 629, 634 (D. Idaho 2012).

[10]Fully titled the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, *opened for signature* Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444.

[11]*See Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for the Southern Dist. of Iowa*, 482 U.S. 522, 530 (1987).

in *Aérospatiale* held that the Hague Convention did not preempt federal or state procedural rules, it did not sanction an American court ignoring it either.[12]

*Aérospatiale* instructed American courts to "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome discovery may place them in . . . ."[13] Indeed, in all cases involving international discovery, the court should, at a minimum, undertake the comity analysis *Aérospatiale* outlined.[14] As many other courts have recognized, a more stringent standard must be applied when considering international discovery issues and relevancy.[15]

In its motion for protective order, Monsanto argued that plaintiffs' deposition notice on Mr. Baumann contravened the Hague Convention. Once the motion for protective

---

[12]*Id.* at 541–47.

[13]*Id.* at 546.

[14]*Aérospatiale* quoted with approval the 1986 Tentative Draft No. 7 of the Restatement of Foreign Relations Law § 437(1)(c) (approved May 14, 1986), stating that these factors are relevant to any comity analysis:

(1) the important to the . . . litigation of the documents or other information requested;
(2) the degree of specificity of the request;
(3) whether the information originated in the United States;
(4) the availability of alternative means of securing the information; and
(5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Société Nationale Industrielle Aérospatiale*, 482 U.S. at 544 n.28; *see also* Restatement (Third) of Foreign Relations Law § 442 [1][c] (1997).

[15]*See Richbell Info. Servs., Inc. v. Juniper Partners L.P.*, 32 A.D. 3d 150, 156 (2006); Restatement (Third) of Foreign Relations Law § 442(a) (1997).

order was denied, Monsanto sought relief under the Hague Convention. It filed for alternative relief as part of a reconsideration motion for an "Application of Hague Convention Procedures" and asked the circuit court that, if the deposition was to proceed, it be conducted in accordance with the Hague Convention. It also sought a hearing and offered "to travel to attend a hearing in any of the counties where the Court is presiding and has availability for a hearing." Opposing counsel did not oppose the hearing request. The court, however, did not hold a hearing on the applicability of an international treaty, but it entered the following order twelve days after the filings:

> On this day, the Court heard Defendant Monsanto Company's Motion for Reconsideration or, In the Alternative, Application of Hague Convention Procedures (the "Motion"). After considering the Motion, Plaintiffs' response and all other matters of record, the Court is of the opinion that the Motion is unmeritorious and should be DENIED.

I can't imagine that denying a hearing and entering an order with no findings was what the Supreme Court intended when it instructed courts to exercise "special vigilance" to protect foreign citizens from overburdensome discovery requests when considering the application of the Hague Convention. The circuit court's failure to adequately consider the Hague Convention was clearly a plain, manifest, and gross abuse of discretion.

Perhaps this was what the dissenting justices in *Aérospatiale* feared when they stated that without more guidance, the majority created "a large risk that the case-by-case comity analysis now to be permitted by the Court will be performed inadequately . . . ."[16] I doubt any members of the Supreme Court contemplated that a trial judge in Arkansas would refuse

---

[16] *Société Nationale Industrielle Aérospatiale*, 482 U.S. at 548 (Blackmun, J., concurring in part and dissenting in part).

a hearing on the application of the international Hague Convention, deny its guidance in one sentence, call the argument for its application "unmeritorious," and order that the first deposition in the case be the foreign CEO of a nonparty multinational corporation in an ordinary products–liability case. To be clear, Mr. Baumann isn't asking not to be deposed, he is simply asking to be deposed according to our rules and the international treaty our government executed.

Notably, the majority doesn't state that the circuit court's refusal was correct; instead, it doesn't seem to think this court should act. Yet this is precisely the circumstance when we should act and our writ is appropriate. It is an extraordinary circumstance, with no adequate remedy available on appeal. Today, the majority gives carte blanche to Arkansas circuit courts in discovery matters with no regard to our rules of civil procedure, federal precedent, or international treaties. American CEOs should fear similar lack of action and comity in foreign lawsuits.

For these reasons, I dissent.

WOMACK and WEBB, JJ., join.

**SHAWN A. WOMACK, Justice, dissenting**. I join fully the dissent's analysis that the circuit court abused its discretion and that there is no other adequate remedy available to the Petitioner. Additionally, I would hold that the circuit court acted in excess of its jurisdiction when it ordered Baumann, a nonparty, to sit for a deposition by notice rather than issuing a subpoena and by failing to give proper consideration to the application of The

13

Hague Convention process. Therefore, since all the requirements for granting the writ have been satisfied, I would grant the writ in this case.[1]

WEBB, J., joins.

*DLA Piper LLP*, by: *Lyn P. Pruitt* and *David F. Koehler*, for petitioner.

*Lance Lee*; and *Forest Weldon Law Group, LLP*, by: *Bart Rankin*, *pro hac vice*; *Jay Utley*, *pro hac vice*; *Joanna Raines McKinney*, *pro hac vice*; and *Joshua Richardson*, *pro hac vice*, for respondents.

*Mitchell, Williams, Selig, Gates & Woodyard, PLLC*, by: *Graham Talley* and *Cara D. Butler*, for amici curiae Federation of German Industries (BDI) and German Chamber of Commerce and Industry (DIHK).

*Wright, Lindsey & Jennings LLP*, by: *Scott A. Irby* and *Gary D. Marts, Jr.*, for amici curiae United States Chamber of Commerce, American Tort Reform Association, and Pharmaceutical Research and Manufacturers of America.

---

[1]*See Baptist Health v. Circuit Court of Pulaski Cnty.*, 373 Ark. 455, 284 S.W.3d 499 (2008).