2010 Ark. 339

**MONTICELLO HEALTHCARE CENTER, LLC d/b/a Monticello Healthcare Center; Perennial Healthcare Management, LLC; Perennial Leaseholdings 6, LLC; Perennial Health Care Holdings, LLC; V. James Santarsiero; Sharon Drake, in her Capacity as Administrator of Monticello Healthcare Center; John Doe I; John Doe II; John Doe III; John Doe IV; and John Doe V, Appellants**

v.

**Jerry GOODMAN, as Special Administrator of the Estate of Leona Goodman, and on Behalf of the Wrongful Death Beneficiaries of Leona Goodman, Appellee.**

No. 10–649.

Supreme Court of Arkansas.

Sept. 23, 2010.

Quattlebaum, Grooms, Tull & Burrow, PLLC, Little Rock, by: Michael N. Shannon, for appellant V. James Santarsiero.

Hardin, Jesson & Terry, PLC, Fort Smith, by: Kirkman T. Dougherty, for appellants Monticello Healthcare Center, LLC, and Sharon Drake.

Anderson, Murphy & Hopkins LLP, Little Rock, by: Brett D. Watson, for appellants Perennial Healthcare Management, Perennial Leaseholdings 6, LLC, and Perennial Health Care Holdings, LLC.

Ludwig Law Firm, by: Gene Ludwig, and David A. Hodges, Little Rock, for appellee.

PAUL E. DANIELSON, Justice.

Appellants Monticello Healthcare Center, LLC d/b/a Monticello Healthcare Center; Perennial Healthcare Management, LLC; Perennial Leaseholdings 6, LLC; Perennial Health Care Holdings, LLC; V. James Santarsiero; Sharon Drake, in her capacity as administrator of Monticello Healthcare Center; John Doe I; John Doe II; John Doe III; John Doe IV; and John Doe V (hereinafter collectively "MHC") interlocutorily appeal three separate orders of the circuit court in a medical-malpractice action brought by appellee Jerry Goodman, as special administrator of the Estate of Leona Goodman and on behalf of the wrongful-death beneficiaries of Leona Goodman. MHC asserts three points on appeal: (1) that the circuit court abused its discretion when it enjoined MHC from transferring assets; (2) that the circuit court abused its discretion when it enjoined MHC and its insurers from paying attorneys' fees for the defense of this case; and (3) that the circuit court lacked authority to order MHC to produce a complete history of attorneys' fees paid. We hold that MHC's appeal of the first

order is moot; we reverse the circuit court's order prohibiting the payment of fees; and we dismiss that portion of MHC's appeal challenging the circuit court's order to produce a history of fees paid.

The relevant facts are these. On July 11, 2008, Goodman filed a complaint alleging twelve claims against MHC relating to the death of Leona Goodman, who was a resident of Monticello Healthcare in Monticello, Arkansas. On May 28, 2010, Goodman moved for an injunction or temporary restraining order, asking the circuit court to "immediately enter an injunction or temporary restraining order preventing Defendants or their agents and counsel from taking any action associated with any sale or attempted sale of any entity or asset of any Defendant pending further order of the Court." Alternatively, Goodman sought a discovery bond or other bond of sufficient sum to prevent the possibility of irreparable harm from the sales. Attached to the motion was an affidavit from Bruce Engstrom, a certified public accountant, who was engaged by Goodman to review certain financial and organizational information relating to MHC. In his affidavit, Mr. Engstrom opined that if a sale were permitted to proceed,

> there is the ability and demonstrated willingness to extensively fragment the resulting liquid assets [Mr. Santarsiero, the owner of Monticello Healthcare] receives in consideration. Because cash is a liquid asset, tracking and determining the extent of any fragmentation upon consummation of the proposed transaction would be onerous for the plaintiffs in the above captioned case.
> F. Based on the letter sent to the Arkansas Department of Human Services by Mr. Santarsiero, it is my belief that the proposed sale is to be consummated as an asset sale. If this is the case, Mr.

Santarsiero's stated intent is to then cease the operations of the entities to be sold. This structure could potentially result in a corporate shell with unfunded liabilities, either perfected or asserted, and no future cash flows to repay these liabilities over time. Therefore, this action will or may cause irreparable harm to the plaintiffs in the above captioned case and other plaintiffs embroiled in similar litigation against these defendants.

A hearing was held on the motion on June 2, 2010, and, five days later, on June 7, 2010, the circuit court filed a restraining order ("Order No. 1"). In that order, the circuit court enjoined all defendants

> from transferring any interest in or asset of any defendant including but not limited to licenses unless and until defendants post a bond in the sum of $300,000.00 to assure at least partial collection of any settlement or judgment in favor of Plaintiff. This bond represents an option available to defendants to lift this Court's restraining order. The bond may not be used to satisfy any obligations of defendants to anyone other than Plaintiff. This restraining order is not intended to prevent administration of food, prescription drugs, supplies, and other things necessary for the care of nursing home residents in the ordinary course of defendants' nursing home operations.

On June 9, 2010, Goodman filed an amendment to his complaint, asserting that MHC's wasting insurance-policy provision was void and requesting an injunction against MHC and its insurance company prohibiting them from attempting to limit Goodman's right to recover anything less than the full, originally stated amount of the insurance policy. That same day, the circuit court issued an order:

Defendants are ordered to provide immediately to this Court the remaining balance available on any policy to pay any of the Plaintiff's judgments. Since these policies have been described as "wasting" policies, the Court orders Defendants to also provide the original limits and how much of these limits have been reduced by attorneys' fees as well as any unpaid and outstanding attorney fees to be charged against the remaining balance.

The Court orders this information to be furnished to the Court and opposing counsel by 4:00 p.m. tomorrow, June 10, 2010.

An additional amendment to the complaint was filed on June 11, 2010, in which Goodman asserted that MHC was attempting to transfer assets contrary to the provisions of the fraudulent-transfer statutes of Arkansas, and on June 15, 2010, a telephone conference was had, which was recorded.

On June 21 and 22, 2010, the MHC defendants filed motions to reconsider or, in the alternative, responses to the motion for injunction or temporary restraining order. In the motions, MHC asserted that the "broad nature" of the circuit court's order of June 7

would proscribe paying employees, meeting contractual obligations, and paying other related business expenses not directly tied to patient care (i.e., taxes, utilities, etc.) The order is both too broad and too vague such that defendants have no way of knowing what business they can continue to conduct.

It averred that the restraining order would cause substantial damages and that Goodman should be required to file a bond.

On the afternoon of June 22, the circuit court filed a second restraining order ("Order No. 2"), based on the telephone conference of June 15. In Order No. 2, the circuit court "on the Motion of the Court," joined "certain third parties," including the State of Arkansas, Arkansas Department of Health and Human Services (ADHHS), and the Office of Long Term Care (OLTC). It then, "[u]pon the Motion of the Court," ordered and directed them

to provide the Plaintiff in this case relevant information as to the information relevant to any attempted transfers of operational control including but not limited to licenses, ownership and any other change in the status quo and to forthwith turn over to the Court and the attorneys for the Plaintiff any and all information dealing with the notice by James Santarsiero of the termination of operation of this nursing home and the issuance of any license for the operation of this nursing home by third parties and to disclose to the Plaintiff and the Court whether or not the permission of the State is necessary in order to transfer and/or issue a new license for the nursing home in Monticello, Drew County, Arkansas.

Also upon motion of the court, the circuit court further ordered and directed the State, ADHHS, and OLTC be "enjoined and restrained from granting any approval for a new nursing home or granting a new license or authorizing any other change" in operational control of the nursing home at issue. In addition, the circuit court, on its own motion, restrained and enjoined the insurance companies involved, American Safety Indemnity Company, Lexington Insurance Company, and Illinois Union Insurance Company, from

making any further payments to attorneys relating to this litigation pending the posting of the bond, by the original Defendants.... If and when the insurance companies and/or other Defendants post a bond, as required by the Court, ... then the Restraining Order and In-

junction shall be lifted as to the payment of attorneys' fees, but until the bond is posted the Court hereby restrains and enjoins the insurance companies from paying any fees to any of the lawyers associated with the litigation involved herein.

The same afternoon, the circuit court entered an additional order concerning the pretrial conference call of June 15 ("Order No. 3"). In that order, the circuit court noted that it had, on its own motion, "sought the net figures that the insurance company or . . . companies have paid concerning claims, attorneys' fees, and settlements and other information." The court further observed that a letter from one defense attorney received in response to the request was to be made a part of the record. The circuit court then ordered Mr. Santarsiero to submit, in camera, the retainer agreement he had with the law firm representing him. Additionally, the circuit court ordered and directed the Perennial defendants in the case to

> provide to the Court any and all declarations pages, terms and conditions of any and all insurance policies, available to the Defendants, in this case, and highlight to the Court that language concerning payment of attorneys' fees and whether or not the payment of attorneys' fees and expenses will be deducted from the limits of liability and to provide the Plaintiffs the agent for service for each insurance company that has any coverage in this case, including, but not limited to, American Safety Indemnity Company.

It further directed that MHC

> provide to the Court, and the Plaintiff, in this case, a complete history of the funds paid under the insurance policies

and the payment of insurance fees described in Michael N. Shannon's letter of June 10, 2010, which is being made an Exhibit in this proceeding.

And again, the circuit court, on its own motion, added parties to the suit, this time including American Safety Indemnity Company, Lexington Insurance Company, and Illinois Union Insurance Company.[1] Finally, the circuit court authorized Goodman to name MHC's attorneys as defendants to the proceeding on issues pertaining to Goodman's "challenge to [the] wasting provisions as to all existing insurance coverage."

The same day, MHC filed its notice of appeal of Order No. 1, and it amended that notice of appeal on June 23, 2010. Also on June 23, Goodman filed a letter to the circuit court, asking it to sign a proposed order rescinding the restraining order of June 7, so as to render MHC's appeal of that order moot, and leaving all other orders in effect. That same day, MHC filed its notice of appeal regarding Orders No. 2 and 3. And, too, the circuit court entered an order, in response to Goodman's request, setting "aside its order restraining the transfer of this facility and any State action in approving or accomplishing the same" and stating that "[a]ll other orders, not injunctive in nature, remain."

On June 28, 2010, MHC moved to vacate or set aside Order No. 2, which restrained the payment of attorneys' fees. Goodman responded asking for a hearing on the motion and stating that "[i]n view of the actions of the Court, rescinding the Restraining Orders, the arguments and merits of the Motion to Reconsider are not applicable." Subsequently, on July 2, 2010, the circuit court entered an order of

---

1. The circuit court also restated its inclusion of the State, ADHHS, and OLTC as parties to the suit.

dismissal without prejudice as to the State, ADHHS, and OLTC, at the request of Goodman. We granted MHC's motion to expedite the instant appeal, and it now appeals the circuit court's orders.

## I. *Order No. 1*

MHC argues, for its first point on appeal, that the circuit court abused its discretion when it entered Order No. 1, restraining the transfer of any assets, for the following reasons: (1) the order was impermissibly vague; (2) the order did not require Goodman to post a bond; (3) Goodman did not demonstrate irreparable harm; (4) Goodman did not demonstrate a likelihood of success on the merits; (5) the order was an unconstitutional prejudgment attachment; and (6) the Uniform Transfer Act did not apply. Goodman rejects each of MHC's assertions and responds that this issue is moot, as Order No. 1 was set aside by the June 23 order of the circuit court. MHC replies that the circuit court's order of June 23, 2010, did not render this first issue moot and urges that the June 23 order is ambiguous, at best.

This court reviews injunctive matters de novo. *See Aviation Cadet Museum, Inc. v. Hammer*, 373 Ark. 202, 283 S.W.3d 198 (2008). The decision to grant or deny an injunction is within the discretion of the circuit court. *See id.* We will not reverse the circuit court's ruling granting or denying an injunction unless there has been an abuse of discretion. *See id.* In reviewing the circuit court's findings, we give due deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *See id.*

As an initial matter, we must determine whether MHC's appeal of Order No. 1 is moot. We conclude that it is. A review of Order No. 1 reveals that it was based upon a hearing held June 2, 2010, and it enjoined MHC from transferring any interest in, or asset of, any MHC defendant until the posting of a bond in order to assure at least a partial collection of any settlement or judgment for Goodman. However, on June 23, the circuit court entered an order, which provided:

> Per the attached letter, the Plaintiff requests that this Court set aside the restraining order resulting from the June 2 hearing. The Court entered the restraining order acting on its own belief that because the Defendants' alleged negligent acts were covered only by a "wasting" liability insurance policy which currently affords Plaintiff little actual coverage due to offsetting defense costs, and no "tail" coverage, that any proposed actions of Defendants dissipating available coverage or Defendants' assets should be restrained.

> Accordingly, the Court restrained the Defendants from transferring the license and any assets of the nursing home. The Court noted, and made part of the record, the fact that the numerous "nursing home" cases filed in this division had all been settled and dismissed. No cases have been tried to verdict.

> However, after checking with the State, the Plaintiff now asserts that the Court's restraining order may have the unintended effect of causing a loss of beds allocated locally and should therefore be set aside. Also, apparently, the Plaintiff would rather risk an uncollectible settlement or verdict. That is their risk to take.

> The Court therefore sets aside its order restraining the transfer of this facility and any State action in approving or accomplishing the same. All other orders, not injunctive in nature, remain.

■ As a general rule, the appellate courts of this state will not review issues that are moot, because to do so would be to render an advisory opinion and this we will not do. *See Kinchen v. Wilkins,* 367 Ark. 71, 238 S.W.3d 94 (2006). Generally, a case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy. *See id.* We have recognized two exceptions to the mootness doctrine. *See id.* The first exception involves issues that are capable of repetition, yet evading review, and the second exception concerns issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation. *See id.*

■ Here, MHC urges that the circuit court abused its discretion in entering Order No. 1; however, by virtue of the circuit court's June 23 order, it is clear that the circuit court set aside Order No. 1, which enjoined any transfer of interests or assets by MHC. By its plain language, the circuit court's order identified the June 7 order and set it aside. Accordingly, it is evident that any decision rendered as to the validity or meaning of Order No. 1, which was subsequently set aside by the circuit court, would have no practical legal effect upon the case. Nor does either exception to the mootness doctrine apply, as the issuance or meaning of this injunction is not capable of repetition, yet evading review, where it is dependent on the facts of the instant case. In addition, the validity of the instant injunctive Order No. 1 does not concern an issue that would raise considerations of substantial public interest, which, if addressed, would prevent future litigation because, again, it is pertinent to the instant set of facts. For these reasons, we hold that MHC's appeal of Order No. 1, which was subsequently set aside by the circuit court in its order of June 23, is moot.

## II. *Order No. 2*

MHC next argues that the circuit court abused its discretion when, on the circuit court's own motion, the circuit court enjoined MHC and its insurers from paying their attorneys any fees for their defense of the case in Order No. 2. It contends that the circuit court abused its discretion because (1) Goodman did not show irreparable harm or an inadequate remedy at law; (2) Goodman did not show a likelihood of success on the merits; (3) the circuit court did not give MHC notice and an opportunity to be heard; (4) the circuit court did not require Goodman to post security; (5) the circuit court had no authority to enjoin the nonparty insurers; (6) Goodman had no standing at the time to pursue declaratory relief as to the insurance policies; and (7) the insurers were not parties to the action. In response, Goodman claims that Order No. 2 was also set aside by the circuit court in its June 23 order, and he disputes MHC's claims on appeal.

■ Again, we must address the issue of mootness first, as the question has been posed as to whether the circuit court's order of June 23 renders moot MHC's appeal of Order No. 2, which restrained MHC and its insurers from paying their attorneys any further attorneys' fees. As already set forth above, the appellate courts of this state, as a general rule, will not review issues that are moot, because to do so would be to render an advisory opinion and this we will not do. *See Kinchen,* 367 Ark. 71, 238 S.W.3d 94.

We simply cannot say that MHC's appeal of Order No. 2 is moot. The plain language of the June 23 order references setting aside only "its order restraining the transfer of this facility and any State action in approving or accomplishing the same." Nor is any mention made of setting aside the circuit court's order enjoin-

ing the payment of attorneys' fees. While the June 23 order further provides that "[a]ll other orders, not injunctive in nature, remain," that language in no way explicitly sets aside the circuit court's Order No. 2 restraining the payment of attorneys' fees. Accordingly we hold that the circuit court's June 23 order does not render MHC's appeal of Order No. 2 moot.

▇▇▇▇ We turn then to MHC's claim, with respect to Order No. 2's restraint of the payment of attorneys' fees, that Goodman did not make a showing of irreparable harm; it is correct. A review of Order No. 2 reveals that the circuit court restrained the payment of attorneys' fees by MHC's insurers "[u]pon the Motion of the Court." However, our rules make clear that an application for injunctive relief must be made to the circuit court prior to a grant of relief. Arkansas Rule of Civil Procedure 65 provides, in pertinent part:

(a)(1) *Notice.* A preliminary injunction or a temporary restraining order may be granted without written or oral notice to the adverse party or his attorney where it appears by affidavit or verified complaint that irreparable harm or damage will or might result to the *applicant* if such preliminary injunction or temporary restraining order is not granted. In all other cases, reasonable notice must be given to the adverse party or his attorney of the *application for a preliminary injunction or temporary restraining order* and an opportunity for such party or his attorney to be heard in opposition thereto. Every preliminary injunction or temporary restraining order granted without notice shall be filed with the clerk and a copy served upon the party restrained in the manner prescribed by Rule 4 of these rules.

Ark. R. Civ. P. 65(a)(1) (2010) (emphasis added). Here, Goodman amended his complaint on June 9, 2010, and asked the circuit court to declare the wasting policy provision held by MHC void. Within this request for declaratory relief, Goodman stated:

10. Plaintiff asks for an immediate injunction against the insurance company for the Defendants in this case attempting to utilize the wasting policy provision, to declare, by way of a Declaratory Judgment action, that the wasting policy provision is void for the reasons specified herein, and to prohibit any attempt by the Defendants, or the insurance company for the Defendants, to attempt to limit the right of the Plaintiff to recover anything less than the full original stated amount of the insurance policy limits without any attempt to deduct or subtract, from the limits of liability, the cost of defense or any other expenses under the wasting policy provision in this case.

▇▇▇▇ Notwithstanding the circuit court's statement that it entered the order on its own motion and assuming that Goodman's request contained within his amended complaint was indeed an application for injunctive relief, the circuit court was required to consider two things in determining whether to issue a preliminary injunction under Ark. R. Civ. P. 65:(1) whether irreparable harm will result in the absence of an injunction or restraining order, and (2) whether the moving party has demonstrated a likelihood of success on the merits. *See Baptist Health v. Murphy*, 365 Ark. 115, 226 S.W.3d 800 (2006). Here, it is clear that neither was asserted, much less shown; therefore, we hold that the circuit court abused its discretion in issuing injunctive relief.

Ark. R. Civ. P. 65(e) provides:

Every order granting an injunction or restraining order shall set forth the reasons for its issuance; shall be specific in

terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained or mandated; and it is binding only upon the parties to the action, their officers, agents, servants, employees and attorneys and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

A review of the order reveals no findings regarding either irreparable harm, or a likelihood of success on the merits. However, Goodman's request for injunctive relief contained within his amended complaint did not assert that he would suffer irreparable harm, nor did it assert a likelihood of success on the merits; rather, the amendment to the complaint merely asserted the bases on which Goodman believed the MHC wasting policy should be declared void. Moreover, a review of the telephone conference following which the order was entered reveals minimal statements by counsel for Goodman; no argument was made in relation to injunctive relief, nor was there any presentation of facts by Goodman supporting irreparable harm or a likelihood of success on the merits. In fact, the restraint of attorneys' fees was developed and ordered by the circuit court itself:

> I want you to make American Safety—you should have their agent for service today—you will serve them with a court order that enjoins them from paying any more attorneys' fees out until this bond is put up.... But since they don't want to put up the bond, then the Court feels obligated and free to do whatever is necessary 'cause it would be so easy to put up the bond. So I want an order that the Court on its own motion enjoins and restrains American Safety from paying attorneys' fees billed in this case from this day forward.

In *Baptist Health v. Murphy,* 362 Ark. 506, 209 S.W.3d 360 (2005) (per curiam), this court reversed and remanded the case to the circuit court for its failure to comply with Rule 65(e), holding that "[w]ithout findings on the issue of the likelihood of success on the merits, we are unable to determine whether the circuit court abused its discretion in granting the preliminary injunction." 362 Ark. at 511, 209 S.W.3d at 363. Because the Drew County Circuit Court failed to make such findings in Order No. 2, this court could remand the matter for the circuit court to do so. However, that would seem an exercise in futility, where no evidence was asserted or presented to the circuit court attempting to support irreparable harm or a likelihood of success on the merits and where the circuit court essentially entered the order on its own.

It is clear that, at most, the circuit court had before it an allegation that MHC's insurance coverage consisted of a wasting policy, which if depleted by the costs of defense might diminish any possible future recovery by Goodman. However, harm is normally considered irreparable only when it cannot be adequately compensated by money damages or redressed in a court of law. *See United Food & Commercial Workers Int'l Union v. Wal–Mart Stores, Inc.,* 353 Ark. 902, 120 S.W.3d 89 (2003). Goodman had no judgment at the time the restraining order was entered; therefore, it was unlikely that he would be irreparably harmed by any depletion of the policy proceeds to which he was not yet entitled. Here, the colloquy between the circuit court and counsel for the parties makes clear that the circuit court acted, in large part, of its own volition in issuing the restraining order, which is further indicated by the circuit court's entry of the restraining or-

der, as stated, on its own motion. Because there were no assertions of irreparable harm or likelihood of success on the merits made by Goodman, and because the circuit court appears to have entered the restraining order on its own motion, we hold that the circuit court clearly abused its discretion in restraining the payment of attorneys' fees by MHC's insurers.[2] Accordingly, we reverse the circuit court's restraint contained within Order No. 2. Because the circuit court's order is reversed on these bases, we need not examine MHC's remaining arguments for reversal of Order No. 2.

### III. *Order No. 3*

MHC argues, for its final point on appeal, that the circuit court lacked authority to order MHC, in Order No. 3, to provide a complete history of attorneys' fees paid. MHC asserts that "a complete history" of fees paid, as ordered by the court, would require it to turn over attorney-client privileged information. Goodman counters that the circuit court's order was not injunctive in nature, but was an interlocutory discovery order that is not appealable except upon final judgment. We agree.

In Order No. 3, the circuit court, among other directives, ordered and directed MHC to

> provide to the Court, and the Plaintiff, in this case, a complete history of the funds paid under the insurance policies and the payment of insurance fees described in Michael N. Shannon's letter of June 10, 2010, which is being made an Exhibit in this proceeding.

Prior to the order, the circuit court had, on its own motion, requested the net figures that the insurance companies had paid concerning claims, attorneys' fees, settlements in other cases, and other information. In compliance with that directive, defense counsel submitted a letter that provided the following:

> We write in response to the Court's order of June 9, 2010 seeking information about insurance policies and attorneys' fees. We are advised by our clients that, currently, there remains $151,594.75 in funds available under the policies to pay Plaintiffs' potential judgments in these cases.[3] This figure is net of attorneys' fees paid in the amount of $532,758.29 and currently to be paid of $360,646.96. The original limits on the primary policy were $3,000,000 aggregate and $250,000 per occurrence. For the umbrella policy, the original limits were $2,000,000 aggregate and $2,000,000 per occurrence. Approximately $3,955,000 have been paid out in settlements to plaintiffs in other cases.

We must first determine whether the circuit court's order to produce a complete history of fees is an appealable order. As noted, Goodman contends that it is not an injunctive or restraining order, which is appealable under Arkansas Rule of Appellate Procedure–Civil 2(a)(6) (2010). This court has defined "injunction" as "a command by a court to a person to do or refrain from doing a particular act." *IBAC Corp. v. Becker,* 371 Ark. 330, 333, 265 S.W.3d 755, 758 (2007). It is mandatory when it commands a person to do a specific

---

**2.** We note that the record in this case is replete with instances in which the circuit court's temperament causes us concern.

**3.** The instant case is one of two lawsuits involving the same defendants and being litigated at the same time. Similar orders were

entered in that suit and are the subject of an appeal submitted as a companion to the instant appeal and decided this same day. *See Monticello Healthcare Ctr., LLC v. Forrest,* 2010 Ark. 340, 2010 WL 3720118.

act and prohibitory when it commands him or her to refrain from doing a specific act. *See id.*

Here, the circuit court's order commands MHC to do a particular act—provide the circuit court and Goodman with a complete history of the funds paid under MHC's insurance policies. However, the mere fact that a circuit court orders something to be done in the progress of a case does not make that order a mandatory injunction. *See Tate v. Sharpe,* 300 Ark. 126, 777 S.W.2d 215 (1989). That is because

> [a]ll court orders are mandatory in the sense that they are to be obeyed, but not all orders are mandatory injunctions. To be a mandatory injunction, the order must be based upon equitable grounds to justify the use of the extraordinary powers of equity, such as irreparable harm and no adequate remedy at law. In addition, the order must determine issues in the complaint, not merely aid in the determination of such issues.

*Id.* at 129, 777 S.W.2d at 216–17 (internal citations omitted). While the order at issue addressed an inquiry raised by the circuit court, it did not serve to determine an issue in the complaint, i.e., whether negligence occurred or whether the insurance policy held by MHC was void. For that reason, it was not a mandatory injunction and, thus, is not appealable under Ark. R.App. P.-Civ. 2(a)(6). We turn then to the consideration of this order as an order of discovery. We have held that an order of discovery is not interlocutorily appealable. *See Ford Motor Co. v. Harper,* 353 Ark. 328, 107 S.W.3d 168 (2003) (holding that this court lacks jurisdiction to consider an interlocutory appeal relating to a discovery matter). But, too, we have held that neither a writ of prohibition nor a writ of certiorari will lie.

This court has previously held that because issues of discovery are squarely within a circuit court's jurisdiction, a writ of prohibition will not lie to solve a discovery problem. *See Lupo v. Lineberger,* 313 Ark. 315, 855 S.W.2d 293 (1993). Nor will this court issue a writ of certiorari in such an instance. MHC claims that compliance with the circuit court's order would require it

> to turn over attorney-client privileged and attorney work product information in violation of Arkansas law.... Such a history could feasibly include the dates attorneys' fees were paid and billing entries describing the work the attorneys performed, *e.g.,* research performed and the subjects of phone calls. It might also include the amount of fees spent on cases and clients far beyond this case and these clients, because the policies cover 18 other entities, including 14 other nursing homes. All such information could provide information to opposing counsel in this, other pending cases, and future cases that could be used against Appellants and other nursing home defendants.

> . . . .

> In addition, once Appellee's attorneys receive the information the court ordered, they will possess that knowledge regardless of how the Court rules later in this appeal. It is a bell that, once rung, cannot be un-rung.

For these reasons, it seeks relief from this court.

Yet, in *Chiodini v. Lock,* 373 Ark. 88, 281 S.W.3d 728 (2008), we held that because a circuit court's discovery ruling is a matter well within the circuit court's jurisdiction and discretion, a writ of certiorari would not lie to correct any perceived error in the circuit court's ruling. In addition, we have observed that we have previously denied petitions for writs of

certiorari even when the alleged discovery violation pertains to materials that the petitioning party claims are privileged. *See Baptist Health v. Circuit Court of Pulaski County*, 373 Ark. 455, 284 S.W.3d 499 (2008). In *Arkansas State Highway Commission v. Ponder, Judge*, 239 Ark. 744, 393 S.W.2d 870 (1965), this court denied the Commission's petition for writ of certiorari despite similar arguments to those made here. There, the court observed:

> This petitioner insists that if it complies with the trial court's order, under protest, its remedy by eventually taking an appeal from the final judgment will be ⌊19inadequate, for, even if we should hold that the discovery order was an error, the harm will already have been done. In effect it is argued that if the cat is ever let out of the bag it can never be gotten back into the bag. An identical argument can be made whenever a discovery order is objected to. To sustain the argument in this case would mean that we should have to make a similar piecemeal decision whenever an application for discovery is unsuccessfully resisted at the trial level. We have repeatedly held that we cannot review interlocutory orders in this fashion.

239 Ark. at 745–46, 393 S.W.2d at 871. For these same reasons, a petition for writ of certiorari will not lie here. Accordingly, we dismiss this portion of MHC's appeal.

Moot in part; reversed in part; dismissed in part.