Cite as 2024 Ark. App. 485

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-23-403

| | |
|---|---|
| | **Opinion Delivered** October 9, 2024 |
| SHIRLEY CRAIN | |
| APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT |
| V. | [NO. 66FPR-20-137] |
| R. RAY FULMER II, ADMINISTRATOR CTA OF THE ESTATE OF H.C. "DUDE" CRAIN, JR., DECEASED | HONORABLE GREG MAGNESS, JUDGE |
| APPELLEE | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

This appeal arises out of the probate administration of the estate of H.C. "Dude" Crain, Jr., deceased. Appellant Shirley Crain is the widow of the deceased, and appellee R. Ray Fulmer II is the administrator of the estate. Mrs. Crain appeals from an order of the circuit court prohibiting certain communication between her and individuals associated with assets of the estate.[1] We affirm.

Premier Foam, Inc., and Dude, Inc. (collectively, the "companies"), are both assets owned by the estate. In fulfilling his duties as administrator, Fulmer was tasked with gathering information about the companies. On January 18, 2023, the court held a hearing

---

[1]This order was entered more than four months after the order on appeal in *Crain v. Fulmer*, 2024 Ark. App. 484, ___ S.W.3d ___, also handed down today.

on the motion of Brian Pope, a contingent beneficiary to the estate, and denied Pope's objection to Fulmer's planned visit to the Premier Foam plant. An unrelated issue was raised by counsel for Phillip Richmond, CPA, at the hearing. Richmond had served as accountant for the companies and as Mrs. Crain's personal accountant. His counsel stated that if Richmond were to remain the accountant for the companies, he wanted to make sure there were no conflicts of interest with Mrs. Crain and asked to be "permitted to share with Mrs. Crain in full disclosure of what's going on between all the parties." The court stated that if Richmond remained as the accountant to the companies, his disclosures should be to Fulmer, not Mrs. Crain. Regarding Pope's objection to Fulmer's plant visit, the court questioned why anyone with Premier Foam had informed Pope about the visit. After hearing that corporate counsel for Premier Foam had "sent an email to everybody" and that Fulmer did not trust the information he had been getting about the operations of Premier Foam, the court stated that it would enter an order requiring that it be informed if anyone from the companies was dealing with anyone other than Fulmer.

The court subsequently entered an order that it amended the following day. The amended order stated that Mrs. Crain, the other beneficiaries of the estate, and their attorneys should have no communication with any officer, employee, attorney, or accountant of the companies pertaining to the business of the companies without prior court approval. The order stated that any prohibited communication shall be reported to the court, that Fulmer should report any refusal to cooperate, and that Mrs. Crain's counsel shall provide a copy of the court's order to legal counsel for Premier Foam. Finally, the order stated that

2

Richmond shall have no communication with Mrs. Crain pertaining to the companies without prior court approval.

At a status hearing several days later, Fulmer's attorney informed the court that after having been made aware of the court's order, Premier Foam's counsel was now cooperating with Fulmer, whereas before, she was "straddling the fence, trying to take directions from two groups." Counsel for Mrs. Crain and Richmond both suggested that the order needed to be amended regarding their clients' communication with each other. Mrs. Crain subsequently filed a motion to reconsider the amended order because it "poses practical difficulties and hardship in its implementation." She argued that she should not be prohibited from communicating with the company employees due to her history and involvement with the companies and that it was necessary to communicate with Richmond regarding her personal taxes and other entities. She requested that the court enter a more limited order that would ensure Fulmer obtains needed information without undue restrictions or interference.

Another status hearing was held before the court ruled on the motion to reconsider. Noting that it had never before seen an administrator have so much difficulty administering an estate, the court said that the purpose of the order was to promote cooperation with Fulmer. Fulmer and his counsel argued that the order was "doing its job" and had facilitated a flow of information. Contrary to arguments made by Mrs. Crain's counsel, the court stated that the order allowed communication with the companies about matters other than their

business operations; however, the court was open to amending the order to allow Mrs. Crain to communicate with Richmond regarding her personal tax returns.

The court subsequently denied in part and granted in part Mrs. Crain's motion to reconsider and entered a second amended order. The order was the same as the prior one with the exception that Richmond was authorized to discuss with Mrs. Crain the financial history of the companies to the extent necessary to prepare or amend her personal tax returns. Mrs. Crain appealed.

Pursuant to Arkansas Code Annotated section 28-1-116(a) (Repl. 2012), a person aggrieved by an order of the circuit court in probate proceedings may obtain a review of the order by the supreme court or the court of appeals. The appellate court reviews probate proceedings de novo, and the decision of the circuit court will not be disturbed unless clearly erroneous, giving due regard to the opportunity and superior position of the circuit court to determine the credibility of witnesses. *Nicholson v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 52, 511 S.W.3d 903.

Mrs. Crain first argues that the circuit court's order constitutes a sua sponte injunction that was improperly entered without compliance with Rule 65 of the Arkansas Rules of Civil Procedure. Specifically, she claims that the circuit court abused its discretion in issuing the injunction without requiring that Fulmer (1) move for injunctive relief; (2) prove that irreparable harm will result in the absence of an injunction; or (3) prove a likelihood of success on the merits. Fulmer argues that there was no request for injunctive

relief, and the court's order does not reference an injunction; instead, the circuit court entered the order on its own accord to aid in the administration of the estate.

The supreme court has defined an injunction as a command by a court to a person to do or refrain from doing a particular act. *IBAC Corp. v. Becker*, 371 Ark. 330, 265 S.W.3d 755 (2007). It is mandatory when it commands a person to do a specific act and prohibitory when it commands him or her to refrain from doing a specific act. *Id.* However, the mere fact that a circuit court orders something to be done in the progress of a case does not make that order a mandatory injunction. *Monticello Healthcare Ctr., LLC v. Goodman*, 2010 Ark. 339, 373 S.W.3d 256. All court orders are mandatory in the sense that they are to be obeyed, but not all orders are mandatory injunctions. *Id.* To be a mandatory injunction, the order must be based on equitable grounds to justify the use of the extraordinary powers of equity, such as irreparable harm and no adequate remedy at law. *Id.* In addition, the order must determine issues in the complaint, not merely aid in the determination of such issues. *Id.*

In *IBAC*, the supreme court held that an order requiring a party to allow the inspection and copying of its records was an injunction. The supreme court interpreted this order as commanding the party to do a specific act and held that such an inspection could determine issues in the complaint, such as breach of fiduciary duty, fraud, and deceit. In *Monticello Healthcare*, the supreme court addressed an order that directed the appellant to provide a complete history of the funds and fees paid under its insurance policies. The supreme court stated that while the order addressed an inquiry raised by the circuit court, it did not serve to determine an issue in the complaint, i.e., whether negligence occurred or

5

whether the insurance policy held by the appellant was void. For that reason, the court held that it was not a mandatory injunction. In *Tate v. Sharpe*, 300 Ark. 126, 777 S.W.2d 215 (1989), the supreme court held that an order commanding a parent to bring his children to be interviewed and to appear and show cause why he should not be held in contempt was not an order granting an injunction. The supreme court held that the order was merely intended to aid in the determination of the issues raised in the complaint filed by the Arkansas Department of Human Services.

The supreme court has declined to hold that a preliminary order that does not finally resolve or determine any part of the action is equivalent to an injunction for purposes of appeal. *Ark. Dep't of Hum. Servs. v. Hudson*, 338 Ark. 442, 994 S.W.2d 488 (1999). Here, the order does not satisfy the requirement of determining issues in the complaint—a clear prerequisite for establishing the presence of an injunction. As noted in Mrs. Crain's brief, there are no underlying adversarial proceedings. Because there is no injunction, Mrs. Crain's arguments present no basis for reversal.

Mrs. Crain also contends that the order should be reversed because it precludes far more speech than necessary to achieve its stated objectives. She cites First Amendment law that prior restraints on speech are heavily disfavored and must be precise and narrowly tailored to achieve the pinpointed objective of the needs of the case. She argues that since there was no evidence and no finding that she had attempted to obstruct Fulmer's ability to obtain information from the companies, the order was not tailored precisely to the needs of the case.

Mrs. Crain's argument ignores the arguments made at the last hearing that the court's order was fulfilling its purpose by allowing a flow of information. In that hearing, her counsel raised specific concerns regarding different parts of the order but acknowledged that she was fine with some aspects, such as prohibiting Mrs. Crain from talking to Richmond about the companies' tax returns without going through counsel. Now she argues without specifics that the entire order is too broad. Although she cites general First Amendment law, she cites no relevant caselaw that would be analogous to an order restricting a party's communication with the employees, attorneys, and accountants of an asset of the estate. We decline to find that the order violated Mrs. Crain's First Amendment rights.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*Jones, Jackson, Moll, McGinnis & Stocks, PLC*, by: *Mark Moll* and *J.* Dalton Person; and *Bryan Cave Leighton Paisner LLP*, by: *Logan M. Rutherford*, pro hac vice, for appellant.

*Barber Law Firm PLLC*, by: *James E. Smith* and *Casey L. Mynatt*; and *Cochran Law Firm, P.A.*, by: *Tamra Cochran*, for appellee.